ORVIL L. DAYTON, Jr., Circuit Judge.
Opinion, June 29, 1953: In his bill for a declaratory decree the plaintiff J. E. Saltz alleges his occupancy of premises located at 444 Central Ave. in St. Petersburg under a written lease dated October 6, 1947 from the defendant Florida Coast Properties, Inc. (hereinafter sometimes referred to as the “corporate defendant”). If not renewed the lease expired on May 1, 1951. Plaintiff alleges he exercised his option to renew the lease, as provided by the terms *54 thereof, by mailing notice of such exercise of the option to renew on October 11, 1947 — for two additional 5 year periods.
The defendants in their answer deny that they ever received the letter wherein plaintiff alleges he exercised his option to renew. In a counterclaim defendants allege plaintiff’s violation of the terms of the lease in that he sub-let a portion of the premises to one G. L. Barnes without the consent of the owners. Defendants further allege the execution of a lease from the corporate defendant to the defendant Abraham C. Schnee dated July 8, 1951, which granted possession of the premises to Schnee as of June 1, 1951, and that plaintiff occupied the premises as a tenant at sufferance after May 1, 1951.
Plaintiff in his reply to defendants’ counterclaim states that his arrangement with Barnes had existed continuously since 1940, with signs on the display window and on the marquee in front of the building indicating that Barnes had women’s footwear for sale in the store and that plaintiff sold children’s shoes in the same premises, that there had never been any written agreement between plaintiff and Barnes but that Barnes paid him a percentage of his sales for the privilege of occupying space in the store, that he had the right to remove Barnes whenever he so desired and that such occupancy by Barnes was with the knowledge and approval of G. M. Nicholson, president of the corporate defendant, and of T. K. Duck-wall, secretary thereof.
Plaintiff contends defendants had actual notice of his intention to renew his lease from the fact that he spent approximately $13,000 for improvements made on the premises, including the installation of an air conditioning system, new carpeting and a renovation of the front of the building — which he would not have done had he intended to vacate the premises in 1951.
Appearing in the record as plaintiff’s exhibit No. 14 is a copy of a letter which plaintiff states he wrote to the corporate defendant dated October 11, 1947 as notice of his exercise of his option to renew the lease. Also in the record as plaintiff’s exhibit No. 21 is a document which plaintiff stated he typed himself as a copy of the letter which appears as exhibit No. 14. Plaintiff further stated that it was not an exact copy — but was a copy “in substance” of exhibit No. 14.
Plaintiff exhibited to defendants’ counsel the copy shown as exhibit No. 21 during the month <?f June, 1951, and was informed by such counsel that in his opinion the language used was not sufficient. to constitute a valid exercise of the option to renew the lease in that it was too vague and indefinite. The significant language *55 in exhibit No. 21 follows — “■____I would like .now to give you notice that I will exercise my option . . . .” The language appearing in exhibit No. 14 follows — “. ... I here and now give you such notice . . . .”
Defendants contend that in June 1951 plaintiff, after being advised of the insufficiency of exhibit No. 21, typed the letter which appears as exhibit No. 14 and dated it back to October 11,1947.
In support of their contention that exhibit No. 14 is fraudulent in that it was not written in 1947, but was in fact written in 1951, defendants offered the testimony of Albert D. Osborne as an expert on questioned documents. Mr. Osborne stated as his expert opinion that the letter in question was written in 1951 and not in 1947. One of his principal reasons for such opinion was that the small letter “t” on the questioned letter could not have been written on the Royal typewriter on which plaintiff testified he wrote it — for the reason that that particular model Royal typewriter had a small “t” type bar of different style and formation. Because of that difference in the construction of the type bars, Mr. Osborne was of the opinion that the letter in question could not have been written on the machine on which plaintiff testified he wrote it. The difference in the type bars occurred by reason of a change by the manufacturer in 1920 from that used in 1919 and prior years.
In response, however, to the following question by the court— “Would it be possible, in the event repair was necessary to the “t” bar of the typewriter made before 1919, to replace that type bar with one made since 1920?” Mr. Osborne testified as follows— “Yes, it is possible ...
In my opinion in order to have probative force the testimony of a witness who qualifies as an expert examiner of questioned documents should be strong enough to exclude every reasonable hypothesis of error. I do not consider it unreasonable to consider the possibility that in the past 25 or 30 years the typewriter in question might have been damaged so as to require the replacement of the original “t” type bar with one of more recent manufacture. If it could have been done, the court considers it fruitless to conjecture whether or not it was done.
Defendants’ claim that Saltz violated the terms of the lease by sub-letting a portion of the premises to Barnes is in my opinion untenable. That Barnes is there and has been there since 1940 with his name on the window, the marquee and the green bench, is not. disputed. Messrs; Nicholson and Duckwall say .only that throughout the period since 1944, when they supervised the premises *56 of the lessors, during which time they visited the premises frequently, they were unaware that Barnes was engaged in the sale of women’s footwear at 444 Central Ave. Whatever the agreement between Saltz and Barnes, defendants after seven years of silence and tacit approval of the arrangement, are estopped to claim a violation of the sub-lease clause of the lease between Saltz and the corporate defendant.
The court finds that the controlling principle of law in this case is as stated in 32 American Jurisprudence, Landlord and Tenant, section 981, page 824 (and approved by our Supreme Court in Dugan v. Haige, 54 So. 2d 201)—
Equity will relieve against the consequences of a failure to give notice which is a condition precedent to the renewal of a lease when such failure results from accident, fraud, surprise or mistake, and there are other special circumstances which may warrant a court of equity in granting relief against the consequences of the lessee’s failure to notify the lessor, within the stipulated time, of an intention to exercise the privilege of renewal.
The “special circumstances” existing in this case which in my opinion warrant the court in granting relief to the plaintiff are—
Defendants had actual notice of plaintiff’s intention to renew the lease.
The corporate defendant accepted rent for the months of May and June, 1951.
Plaintiff, by maintaining his business at 444 Central Ave. for many years, was well established as a merchant of children’s footwear at that location.
Plaintiff remodeled, refurnished and air conditioned the premises at substantial cost.
Plaintiff’s arrangement with G. L. Barnes for the use of a portion of the premises for the sale of women’s shoes had continued at the same location since 1940.
Defendants through the use of ordinary care should have known of Barnes’ presence in the premises and having remained silent since 1944 when the corporate defendant became the lessor are estopped to complain now of any violation of the sub-lease clause.
Such injuries as the defendants, or either of them, may have sustained are attributable to their own action.
The testimony of the expert examiner of questioned documents lacks probative force because of his admission that a reasonable hypothesis of error in his opinion was not excluded.
*57 It is therefore the opinion of the court that the equities in this cause are with the plaintiff, that the facts and circumstances here existing are such as to warrant this court of equity granting unto plaintiff the relief sought. An appropriate decree may be prepared from this opinion.
Decretal portions of final decree, September 1953: It is ordered, adjudged and decreed that—
Plaintiff’s lease of the property therein described is a valid lease and the same has been and is hereby extended to May 1, 1961.
Plaintiff and defendants are bound by the terms thereof until its expiration date, as extended to May 1, 1961.
Any rent moneys which plaintiff has paid to the clerk of the court and which have not already been delivered to defendants or their attorneys shall be delivered by the clerk to defendants or their attorneys upon request. The order requiring plaintiff to pay rents to the clerk is hereby vacated.
The relief prayed for in the counterclaim filed by the defendant Abraham C. Schnee is denied.
Defendants have waived any objection which they may have had to the partial use of the leased premises by G. L. Barnes in the manner in which he has been using it for the past several years.