MRS. W. B. THOMPSON, Executrix, v. OSCAR W. FREEMAN.

149 So. 740.
Opinion Filed July 17, 1933.

434

*Phillips & Thompson*, for Appellant.

*Wm. E. Thompson, Morris E. White* and *W. T. Martin*, for Appellee.

DAVIS, C. J.—A will contest based on a charge that the will was a forgery was tried before the County Judge of Hillsborough County, who decided in favor of the validity of the will. An appeal was taken to the Circuit Court from the decision of the County Judge. Upon consideration of the appeal the Circuit Court reversed the holding of the County Judge and found from the record that the probate of the will should be revoked. The case is now before this Court on an appeal from the decision of the Circuit Judge.

On July 29, 1929, a written instrument purporting to be the last will and testament of Mrs. O. W. Freeman was presented to the County Judge of Hillsborough County for probate. Thereafter the will was admitted to probate in due form of law.

The will, after making certain bequests of real and personal property to the husband of the deceased, Oscar W. Freeman, who is the appellee here, leaves a one-sixth inter-

est in an orange grove in Pinellas County which testatrix inherited from her father to her "blood kin," designating certain nephews and nieces, all of whom were minors of tender years. In the will as probated, the testatrix named her mother, Mrs. W. B. Thompson, the proponent of the will for probate, as executrix.

On the 2nd day of August, 1929, the contestant, the husband of the testatrix, filed before the County Judge his petition to revoke the probate of the will, setting up that under the intestate laws of the State of Florida he would be the sole heir of the deceased; that the will was not the true last will and testament of the deceased and had never been executed by said deceased in the manner required by law; furthermore that the signature thereto was forged. The petition concluded with a prayer that the court decree that the signature was false, fraudulent and forged.

On November 8, 1929, the cause was submitted to the Hon. G. E. Cornelius, County Judge of Hillsborough County, for consideration upon the issues made up by the pleadings. One of the facts set up by the answer to the petition for revocation of probate was that the original will which had been admitted to probate on July 31, 1929, had been taken from the office of the County Judge by counsel for contestant and kept from the court's custody until August 29, 1929, during which time the will was either in the possession of the contestant's attorney or of his prospective witnesses, one of whom resided in Miami; that shortly after the return of the will to the County Judge's office on August 29, 1929, that the original will had again been taken from the County Judge's office by some unknown person and that it had mysteriously disappeared at that time and had not since been found.

For the proponent of the will, Mr. O. C. Brooks, an attorney in Tampa, and a brother-in-law of the contestant,

testified that either on Thanksgiving or Christmas prior to the death of the testatrix she had requested him to prepare a will leaving a one-sixth interest in a grove she had inherited from her father to her minor nephews and nieces. He further testified that he had, because of his friendship for the contestant, advised the testatrix that he would prefer that she procure the services of some other attorney.

Mrs. Harry Jukes, a sister of the deceased, testified that subsequent to the death of her father the testatrix had discussed with her a number of times her intention to prepare a will leaving her interest in the grove which she had inherited from her father to her nephews and nieces, because they were her "blood kin." It was further stated by Mrs. Jukes that on these occasions the testatrix had stated that it was her desire that her part of the grove should remain in the family—the last of these conversations having taken place at the grove about two weeks before the date upon which the will was purported to have been executed.

In support of the genuineness of the signature appearing on the will, Mr. Edwin L. Bryan, an attorney of Tampa, testified that on the day of the date of the will testatrix, Mrs. O. W. Freeman, had called at his office and had requested him to prepare for her a will; that he had made pencil notations of her instructions with respect to the details of same on a piece of yellow paper and had thereafter himself personally typed the will in his office on an L. C. Smith typewriter. The sheet of yellow paper referred to by the witness and containing the notations testified to by him was produced in court in corrobation of his statement.

Mr. Bryan further testified that while he was preparing the will one Mike Licata, who operated a barber shop on Franklin Street in Tampa, came to see him at his office and that on the occasion referred to and at the request of the

testatrix, he and Licata signed the will as witnesses in her presence and in the presence of each other.

It was also Mr. Bryan's testimony that he knew nothing about Mrs. Freeman's family or estate and that all the information contained in the will that he had prepared for her was procured from her and noted at the time; that while he had previously met Mrs. Freeman that he did not recognize her when she first came into his office, but remembered her upon her recalling to him the fact of their former meeting; that he had charged the testatrix $25.00 for his services in preparing the will, of which amount she had paid him $10.00 on account and had left the will with him, stating that Mrs. Thompson, her mother, would call for it and pay the balance of his bill; that he made a notation on the back of the will to this effect; that he had folded the will and the notes he had made together and put them in a drawer of his desk; that he had moved his law offices a short time thereafter and that some months after he had become settled in his new offices he ran across the will and notified Mrs. Thompson, who was named as executrix, advising her of the fact that he held the will and asking that she come to his office, pay the balance of his bill and take the will with her. The original letter of Mr. Bryan to Mrs. Thompson and the envelope in which it was mailed was offered and received in evidence in substantiation of Mr. Bryan's testimony.

Mike Licata, the other subscribing witness to the will, testified that he had received a check from someone at Ybor City, Tampa, which had been returned to him for lack of funds; that because of this he made a visit to the office of Attorney Bryan for the purpose of turning the check over to him for collection; that the date of the visit was late in the afternoon of February 6, 1929, the date on which the will was purported to have been executed and

witnessed; that when he went to Mr. Bryan's office he noticed that there was a lady in the private office of Mr. Bryan and that while Mr. Bryan was transacting his business with this lady that he (Licata) remained in the outer office; that some minutes later Mr. Bryan called him into his private office, introducing him to the lady whom he had never met before, and at the lady's request and in her presence and in the presence of Mr. Bryan, he and Mr. Bryan had signed the will as witnesses.

The contestant then called as his first witness Mr. B. W. Cornelius, who testified that he was a clerk in the office of the County Judge and that the will had been filed with him as clerk and probated on July 29th; that shortly after this that he had allowed it to be taken from the County Judge's office by Mr. Earl Thompson, an attorney, who returned it about thirty days later; that two days after the will had been returned to the County Judge's office, Mr. John De-Marco, an attorney representing the proponent, and Mr. Freeman, the contestant, called together at the County Judge's office for the purpose of comparing the signature on the will with the signature of the testatrix on certain checks; that he thereupon discovered that the will had disappeared and that it had never since been found.

The witness Cornelius was handed what was purported to be a photograph of the lost will and was asked to testify whether or not it was a true photograph of the signature as he had observed it on the original will. All the testimony of the witness concerning the photograph as being a true photograph of the will that disappeared was objected to by the executrix on the ground that such testimony was part of an indirect attempt to re-establish in the court of the County Judge a lost instrument. It was further contended that since the original will itself had disappeared and could not be produced to be offered in evidence in the

pending proceeding, that it would have to be re-established in the Circuit Court as provided in the statutes. Sections 5054-5058 C. G. L., 3246-3250 R. G. S.

All the objections made were reserved and preserved throughout the trial and urged in the form of a motion to strike the testimony at the close of the case. The court reserved his ruling and took the entire matter under advisement. The disputed photograph was tendered in evidence and upon objection thereto was permitted to be received and filed with the statement that the County Judge would reserve his ruling as to its admissibility.

Later the County Judge rendered a decision in writing in favor of the proponent of the will by denying the prayer of the petition of the contestant husband. This decree as filed did not include any specific ruling on the contested points of evidence, but in view of the fact that all of the evidence objected to had been allowed by the County Judge to be at least incorporated in the record, including the' disputed photograph of the missing will, and in view of the fact that all of this evidence was later certified by the County Judge to the Circuit Court on the appeal to that court as being part of the proceedings before him, it is clear that for the purpose of disposing of the case here, the disputed evidence and photograph must be considered as having, been allowed in evidence, notwithstanding the proponent's objection to its consideration was never specifically overruled.

To permit evidence to be tentatively offered and received in the course of a hearing or trial with the announcement that objections timely interposed to it would be reserved for ultimate decision on the question of striking from the record, is equivalent to overruling the objections, where the court decides the case without making any affirmative ruling actually eliminating the testimony from the record. A

ruling of this character is equivalent to a denial of the objection with a reservation that the court will defer for future consideration whether or not it will ultimately reject the challenged evidence by specifically ruling it out.

This brings us to the proposition of law which we regard as decisive of the present appeal. That proposition is whether or not at a trial involving a disputed signature to a missing will the person seeking to have the signature declared a forgery may, without having applied for a re-establishment of the lost paper by a proceeding in the Circuit Court, be permitted to offer in evidence what purports to be a photograph of the missing will for the purpose of showing that the photograph of the will discloses evidence on the face of it that the original will was a forgery.

Proceedings to annul a will on the ground of forgery, or on any other ground going to its genuineness as such, are treated as proceedings *in rem*. The probate of a will establishes its status. And the status thus established adheres to the will as a fixture and binds and concludes the whole world so long as the probate remains unaffected. This is so because an order or decree of probate made by the authorized register of wills, is regarded as being a judicial decree that operates upon the paper purporting to be a will after it has been presented in proper form, and has been found by the judicial officer with whom it is required to be probated, to be a will duly proven as such in the manner prescribed by law. The resultant decree of probate is therefore binding upon the world, and the paper thus admitted to probate and recorded as a will by the register of wills, becomes in contemplation of law, the established and proven last will and testament of the decedent until it is set aside in appropriate proceedings, unless the decree of probate shows on its face that it contravenes the law or public policy to give it such effect. So strong was the pre-

sumption in favor of the genuineness of a will once duly proven and admitted to probate, that the courts of the common law formerly went so far as to hold, that the forgery of such a probated will, could not be made the ground of an indictment for the forgery until the probate had been revoked, although this rule is now practically obsolete. Barry v. Walker, 103 Fla. 533, 137 Sou. Rep. 711.

Because of the nature of the proceedings as being one *in rem,* when revocation of a decree of probate is petitioned for on the ground of forgery of the will, or other valid ground for revocation thereof, the statute authorizes the proceeding for revocation of probate to be brought by any interested person and the case to be proceeded with on a citation served only upon the executor or administrator with the will annexed, without making as parties to the proceeding, all the devisees and legatees who might claim under it, although the statute is not to be construed as prohibiting any of the heirs, devisees or legatees from making themselves parties to the proceeding by their own voluntary intervention if they so desire. See Section 5476 C. G. L., 3611 R. G. S.

In this case, the two attesting witnesses testified to the genuineness of the will. Their testimony was corroborated to a substantial degree by other evidence. To overcome the testimony of the attesting witnesses, two handwriting experts, one of whom had never seen the original will at all, testified for the contestant, that in their opinion as such experts, the signature of Mrs. O. W. Freeman, appearing on the probated will as the testatrix of it, was a forgery.

Because the original will was missing at the trial, it was essentially impossible to demonstrate by an inspection of the original document in open court, whether or not the conclusions testified to by the experts were supported by

anything appearing on the face of the disputed document, viewed in comparison with admittedly genuine writings.

To meet this unusual situation, contestant attempted to substitute, and thereafter to use with like effect as the original document could have been used, an unofficial photograph alleged to have been made of the missing will before it disappeared. And, by a comparison of the disputed signature appearing on the original will *only as photographed,* with certain signatures of Mrs. O. W. Freeman proved to the satisfaction of the trial judge to be genuine, it was attempted to be established by the testimony of the contestant's experts, that the original will was never a genuine document, in spite of the fact that it had been duly accepted as such, and allowed to be probated, and had been thereafter duly recorded in the public record of wills, as the genuine last will and testament of Mrs. O. W. Freeman.

At common law it was not possible to prove the genuineness of a signature or writing by comparison with any other signature or writing. The reasons usually given for the common law rule were, that the handwriting of a person was constantly changing during his lifetime and was likely to be affected by his health, mood of mind at the time of writing, his haste or leisure of writing, the character of the pen, ink or paper, or other fortuitous circumstances. Such factors, the common law judges (perhaps with too high a degree of caution deemed by them to be necessary to guard against the likelihood of perjury or fraud), rendered comparisons of writings, even by admitted experts, too uncertain to be accepted as trustworthy evidence in a matter involving disputed signatures or writings. See 22 C. J. 777, note 30 (a) ; Hickory v. United States, 151 U. S. 303, 14 Sup. Ct. Rep. 334, 38 L. Ed. 170. This court, however, has regarded the statutory abolition of the common law rule as being of great value toward promoting the ad-

ministration of justice in cases where comparisons of disputed writings are properly made. See Boyd v. Gosser, 78 Fla. 70, 82 Sou. Rep. 758, 6 A. L. R. 507.

Florida and a number of other states have modified the common law rule by statute. Our statute (Section 4411 C. G. L., 2739 R. G. S.) provides as follows:

"Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by the witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the jury, or to the court in case of a trial by the court, as evidence of the genuineness, or otherwise, of the writing in dispute. (Ch. 1096, Feb. 8, 1861, Sec. 55.)"

It has been generally held that, under a statute like ours, the genuineness of a disputed signature, not before the court, cannot be proved by a comparison of secondary evidence of the disputed signature with a genuine signature. The statute only allows comparison between the disputed writing itself (or its legal equivalent) and the genuine handwriting of the person purporting to be a writer of the disputed writing. Peck v. Callaghan, 95 N. Y. 73.

Thus in White S. M. Co. v. Gordon, 124 Ind. 495, 24 N. E. Rep. 1053, a photograph of an enlarged microscopic copy of a disputed signature was excluded when offered in evidence for a comparison with the genuine signature. And in another case (Hynes v. McDermott, 82 N. Y. 41, 37 Am. Rep. 538) the highest appellate court of New York observed that in so delicate a matter as the reaching of judicial results by a comparison of writings through the testimony of experts, it ought to be required that the expert witness should exercise his acumen *upon the thing itself* which is to be the basis of his judgment, and still more,

that the thing itself should be at hand to be put under the eye of other witnesses for the trial upon it of their skill.

We approve the rule stated in the case just cited that an expert in handwriting, when speaking as a witness only from a comparison of handwriting, that is, with two or more pieces of it in juxtaposition under his eye, should have before him in court the writing to which he testifies and the writings from which he testifies, else there can be no intelligent examination of him either in chief or in cross, nor can there be fair means of meeting his testimony by that of other witnesses. This requirement is included in the rule that there can be no comparison of handwriting, unless the pieces of writing by which the comparison is made, are properly before the court in evidence in the case, for some purpose other than being compared. See also Randolph v. Louglin, 48 N. Y. 456; Dubois v. Baker, 30 N. Y. 355; Miles v. Loomis, 75 N. Y. 288, 31 Am. Re. 470.

In this case, at the time of the trial, the original will was lost. So the disputed document itself could not have been produced in court by contestant for the purpose of making a comparison of the signature on it, with admittedly genuine signatures of the person appearing to have signed it as testatrix.

But under the statutes of this State, contestant was not without legal means of having his unofficially made photographic copy of the missing will (if provable as a fair and authentic reproduction) made evidence legally equivalent to the lost original, for the purpose of using the photographic copy in a comparison of writings test by expert witnesses.*

---

*It should be constantly kept in mind that the decision in this case is required to deal with an attempt to use an unofficially made photographic copy of a document with like effect as if it were the original, by proving the circumstance of the loss of the

Sections 5054-5056 C. G. L., 3246-3248 R. G. S., read as follows:

"5054. (3246). WHAT MAY BE RE-ESTABLISHED.—All papers, written or printed, of any kind whatsoever, and the records and files of any official, court of public office, may be re-established in the manner hereinafter provided.

"5055. (3237). WHO MAY RE-ESTABLISH.—Any person interested in the paper, file or record to be re-established may re-establish the same.

"5056. (3248). IN WHAT COURT TO BE HAD.—All proceedings had under the provisions hereof shall, if the re-establishment be sought of a record or file, be had in the circuit court of the county where such record or file existed before the loss or destruction thereof; and if it be a private paper, in the circuit court of the county where any person to be affected thereby shall live, or if such persons be nonresidents, then in the circuit court of any county in which the person seeking the re-establishment may desire."

Section 5058 C. G. L., 3250 R. G. S., provides that any paper, record or file re-established in accordance with the preceding statutes, *shall have all the force and effect of the original.*

While the point has never before been decided in this State, we know of no reason why the statutes above referred to would not authorize the re-establishment of a lost will, including the exact signature appearing on it, by ju-

---

original and the offer of the photograph as secondary evidence of what the original appeared to be. Whether or not the rule stated in this case would apply to an officially made photographic record itself, required to be kept on file in a public office as an authorized record made by photographic process, is not involved, nor is that question to be regarded as decided in this case. Such question should be reserved for future consideration when occasion for deciding it makes a decision on that point necessary.

dicially decreeing that a true photographic copy of the lost will should stand in the files in lieu of the missing paper, with all the force and effect of the original, for purposes of comparison of writings or otherwise.

But to re-establish a lost will under the statutory procedure of the Circuit Court, would present the correct, and not the collateral issue, of the exactness in detail of the purported photograph sought to be re-established as having the force and effect of the original. And persons interested in resisting the making of a re-establishment decree authenticating the photographic copy, would not be without a means of directly interposing, before the proper tribunal, the controvertible issue, if such should be the case, that the photographic copy should not be received as having the same force and effect as the original for purpose of comparison of it as a writing, because of defects in photographing, or alterations or exaggerations in the appearance of the document as photographed. Thus, there would be settled in the re-establishment proceedings in the Circuit Court as a direct issue of fact, the authenticity of the photograph as being a fair representation of the appearance, as well as the text, of the original document. And thus also, that issue would be adjudicated in the only court having jurisdiction to conclusively adjudicate it—namely, the Circuit Court. Any other rule would simply attribute to a decision of the County Judge on a collateral issue involving the admissibility of the alleged photographic copy of the will in evidence, the force and effect of a finding and adjudication that only the Circuit Court is given authority to make.

We hold, therefore, that before a photographic copy of a missing will or other paper, can be used in evidence for the purpose of testing the genuiness of the signature or writing reproduced in the photographic copy of the original document that has been lost, by having a comparison of disputed

writings test made of it by experts, as permitted by our statute governing comparison of disputed writings (Section 4411 C. G. L., *supra*) that the photographic copy so used, must have first acquired by proper re-establishment proceedings in the Circuit Court, the same force and effect as the original document would have had, could the same have been produced in court and used by the experts for the same purpose.

The ruling of the Circuit Court reversing the County Judge's finding in favor of the genuineness of the will, could only have been arrived at on the present record, by attributing to the unofficially made (though perhaps authentic) photographic copy of the last will, as produced at the trial by the contestant in this case, the same force and effect as the original, without any re-establishment of it as such having been first decreed by a court of competent jurisdiction as contemplated by law. The re-establishment of a photographic copy of the lost document as being a copy capable of being used with the same force and effect as the original could have been used, is not permitted by the law to be brought about collaterally, but is required to be done directly in the form of proceeding the statutes have devised for the purpose of judicially re-establishing not only the text, but the physical appearance, of lost documents.

In this case the physical appearance of the signature on the original will, not the mere text of it, was the vital thing required to be considered under our statute as a basis, for testing the genuineness of the disputed signature, by making a comparison of its physical appearance with that of other signatures proved to the satisfaction of the trial judge to be genuine.

The rule requiring the identical disputed writing to be produced in court, for the purpose of having before expert witnesses all the writings about which they testify, in order

to give opportunity to the litigants for an intelligent examination of such experts, as well as a means for meeting their testimony by that of other witnesses, can only be satisfied by the production in court of the original document in dispute, or such equivalent copy of it, as will in law be entitled to be considered as having the same force and effect as the original, for the purpose of testifying to an expert opinion based on comparisons of appearances.

The decree of the Circuit Court should be reversed, and the cause remanded with directions to the Circuit Court to cause such further proceeding to be had in the court of original jurisdiction as will not be inconsistent with this opinion.

Reversed for further proceedings.

WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.

BUFORD, J. (concurring specially).—I concur in what is said by Mr. Chief Justice DAVIS in the majority opinion in this case, but I think in view of the circumstances which are shown to exist by the record in this case that it may be well to say now that before a photographic copy of the alleged lost will could be used for the purpose and as a basis for the re-establishment of the lost will, it must be shown that the signature on the lost will at the time the photograph was taken had in all respects exactly the same appearance which it had when it was filed for probate. Without this requirement the photographic copy could be of no value as to the appearance of the signature on the will when it was probated.

The contention made in this case is that the signature of the purported testatrix was traced on the will; that is, some genuine signature of hers was used as a physical guide over which to trace the signature on the will. This result in appearance could be accomplished after the will had been actually executed by her by a tracing over her signature.

Furthermore, I think that if it had been shown that the photographic copy of the will which was used in evidence had been proven in a court of competent jurisdiction and the contents and the appearance of the will had been thereby re-established, the evidence would then have fallen far short of being sufficient to prove the execution of the will to have been a forgery. To my mind, the record established the genuineness of the will beyond every reasonable doubt, and therefore, I think that the error which was committed in the County Judge's Court by allowing certain illegal evidence to remain in the record was harmless error and that the decree of the Circuit Court should be reversed, with directions that the judgment and decree of the County Judge be affirmed.