In re BAIER'S WILL.
No. 14808.

County Judge's Court, Palm Beach County.

August 20, 1958.

Farish & Farish, West Palm Beach, for proponent.

Williamson, Gunster & Baugher, Palm Beach, for contestants.

RICHARD P. ROBBINS, County Judge.

This matter is before the court upon the petition of Irvin J. Leighton for an order to probate a purported last will and testament of Helen Louise Baier, deceased, dated August 12, 1954. Miss Baier, a resident of Palm Beach County, departed this life on the 2nd day of May, 1958.

On the 7th day of May, upon petition duly presented, the First National Bank in Palm Beach was appointed curator of her estate, whereupon the curator presented the will in question to the court.

The will provides, inter alia, as follows—

.*"Item 2:* I give, devise and bequeath all my estate whatsoever, and wheresoever, both real and personal, to which I may be entitled, or which I have the power to dispose of at the time of my death, unto my dearest friend Irvin J. Leighton absolutely and in fee simple.

*"Item 3:* Should said friend predecease me or should we die in a common disaster at approximately the same time or under circumstances as to render it difficult to determine who died first, then I give, devise and bequeath all my said estate to my beloved friends, Eileen Taylor, Lois Green, Ann Hughes Price, Josephine Sheeran, Dorothy Duskin, Hazel Sowell and St. Ann's Church equally shared and absolutely and in fee simple. In the event of the death of any herein named, said portion will not pass on to the deceased heirs, but the remaining shall share equally in this estate."

Across item 2 appears the word "cancelled", written in pencil in large letters. Underneath this word between items 2 and 3 appear the initials "H B", also in pencil. On the margin of the will between said items is the date "3/14/57." Below this and on the margin to the right of item 3 is the signature "Helen L. Baier." In item 3 the names Eileen Taylor and Dorothy Duskin have been deleted with pen and ink.

To the petition for probate, Robert G. Harmon, James Baier, Christina Shumaker and Barbara Anders, heirs at law of Helen Louise Baier, have answered that the instrument delivered to the county judge and filed herein is not a will of the decedent that is entitled to probate.

The question presented to the court is *whether or not the will was cancelled by an act of the testatrix with the intention of revoking it.*

In this state, "Common law rules of revocation are in force as far as they are suitable to existing conditions, and not repealed by specific statutes," Herzog v. Trust Co. of Easton, 67 Fla. 54, 64 So. 426 (1914).

Our statute, section 731.14 Florida Statutes 1957, enacted in 1933, is not in conflict with the English statute on the subject. It provides—"(1) A will may be revoked by the testator himself or by some other person in his presence and by his direction, by burning, tearing, cancelling, defacing, obliterating or destroying the same . . . ."

In 1 Cooley's Blackstone, 4th Ed., page 731, it is stated that the statute of frauds and perjuries; 29 Car. 11, c 3, directs that all devises of lands and tenements shall not only be in writing, but signed by the testator, or some other person in his presence, and by his express direction; and be subscribed in his presence, by three or four credible witnesses. And a solemnity nearly similar is requisite for revoking a devise by writing; though the same may be also revoked by burning, cancelling, tearing or obliterating thereof by the devisor, or in his presence and with his consent.

The first procedural question presented to the court in this case is the burden of proof.

In his monograph on probate law entitled "The Function of Will Contests" Lewis M. Sims, professor of law at the University of Michigan (Michigan Legal Studies 741) says—"Concededly, the proponent, in the absence of a statute to the contrary, would have the affirmative of all issues which are not matters of affirmative defense, and the true burden of proving whatever is necessary to make out a case in a contest before probate." And on page 743— "There seems to be also a third approach found in statements of the courts to the effect that the proponent must make a prima facie case by proving formal execution of the will, after which the contestant has the burden of proving all his grounds of contest. The latter approach is inconsistent with the proposition that the true burden of proof never shifts, and it is not clear that in the absence of statute, these statements are meant to deny that proposition."

In Florida the legislature has enacted the following statute, section 732.31, Florida Statutes 1957—"In all proceedings contesting the validity of a purported will, whether before or after such will is admitted to probate, the burden of proof, in the first instance, shall be upon the proponent thereof to establish, prima facie, the formal execution and attestation thereof, whereupon the burden of proof shall shift to the contestant to establish the facts constituting the grounds upon which the probate of such purported will is opposed or revocation thereof is sought."

And Mr. Redfearn in his work on "Wills and Administrations of Estates in Florida", 3rd Ed., sec. 124, says—"The burden of proof is upon the propounder to establish the existence of a valid will.

When the case is called for trial, it is the duty of the propounder of the will to make out a prima facie case by showing that the will was executed with the formalities required by law. When this proof has been made, the propounder may rest his case, and the burden is shifted to the contestant.

Pursuant to the statute aforesaid, the propounder of the will in this case proceeded to prove that the same was duly executed by the testatrix, Helen Louise Baier, in the presence of three subscribing witnesses who signed in the presence of the testatrix, and in the presence of each other. There is no dispute as to this fact. He then rested his case.

The respondents, or perhaps they should more properly be called the contestants, then produced three witnesses who testified that several days after the death of decedent while searching through her private papers in her home they discovered the will in question; that the word "cancelled", the initials "H B", the date "3/14/57" and the signature "Helen L. Baier" written in pencil, were on the will at the time it was found; that it was among decedent's papers and had apparently been in her exclusive possession.

At that point the court held that where a will is found among the effects of the testatrix and was in her exclusive custody after its execution until her death, the presence of the word "cancelled" written across a dispositive provision thereof raised the presumption that the will had been revoked by the testatrix—and that the burden of proof to overcome such presumption shifted to the proponent of the will. (See 95 C.J.S. 281, sec. 385).

Mr. Redfearn in section 87 of his work, supra, says—"Where an instrument found among the decedent's papers is offered for probate, and it has been obliterated or cancelled with a lead pencil in a material part, the presumption arises that the testator intended a revocation of his will, and the burden is on the propounder of the will to rebut such presumption."

Whereupon the proponent for the purpose of rebuting the presumption of revocation called an expert on questioned documents who testified that the word "cancelled" and the initials "H B" thereunder were not in the handwriting of the testatrix, Helen L. Baier, and were not written by her, and rested his case.

At this point the contestants produced an equally well qualified expert on questioned documents who testified that the initials "H B" under the word "cancelled" were definitely in the handwriting of the testatrix.

Both experts testified at length and from exhaustive standards of writings of the deceased. Their testimony, taken as a whole is irreconcilable, one with the other.

In Thompson, Executrix v. Oscar W. Freeman, 111 Fla. 442, 149 So. 740, our Supreme Court said—

"At common law it was not possible to prove the genuineness of a signature or writing by comparison with any other signature or writing. The reasons usually given for the common law rule were, that the handwriting of a person was constantly changing during his lifetime and was likely to be affected by his health, mood of mind at the time of writing, his haste or leisure of writing, the character of the pen, ink or paper, or other fortuitous circumstances. Such factors, the common law judges (perhaps with too high a degree of caution deemed by them to be necessary to guard against the likelihood of perjury or fraud), rendered comparisons of writings, even by admitted experts, too uncertain to be accepted as trustworthy evidence in a matter involving disputed signatures or writings. This court, however, has regarded the statutory abolition of the common law rule as being of great value toward promoting the administration of justice in cases where comparisons of disputed writings are properly made."

While our statutes (sections 90.20 and 90.23, Florida Statutes) have made the testimony of both expert and non-expert witnesses admissible as to opinions regarding writings by comparison, I feel that there is much to be said in favor of the common law rule in giving weight to the evidence so produced, especially where experts who hold professional degrees and are regularly engaged in the practice as experts on questioned documents so completely disagree as is the case here.

In Saltz v. Florida Coast Properties, Inc., 5 Fla. Supp. 52, Judge Dayton said—"In my opinion in order to have probative force the testimony of a witness who qualifies as an expert examiner of questioned documents should be strong enough to exclude every reasonable hypothesis of error."

In Kuehmsted v. Turnwall, 115 Fla. 692, 155 So. 847, where the lack of testamentary capacity on the part of the testatrix to make a will was in issue, our Supreme Court said, regarding the expert opinions—"The evidence of the two alienists was intensely interesting and instructive, but it adds nothing whatever of probative value to the case. Both were outstanding men in their line and testified very learnedly, but the result of their testimony as to the

sanity of Mrs. Kuehmsted was as inharmonious and conflicting as it was possible for it to be, so we consider that it balanced and was as if it had not been offered."

I have come to the same conclusion in the case now before this court.

This ruling might well be said to be, in effect, a holding that the proponent, having rested his case upon the testimony of his expert witness, has failed to bear the burden of overcoming the presumption of revocation—however, as my learned colleague County Judge Jack F. White said, in In re Langille's Will, 8 Fla. Supp. 7, at page 14—"The presumption is not evidence but a rule about evidence, and any court failing to inquire fully to ascertain the entire factual picture of a case assumes the risk of giving the rule an effect not intended by law."

And so it behooves the court to turn to the testimony of the other witnesses in the case to determine from all of the evidence where the preponderance lies.

The contestants produced as their witness one Ann Price who testified that Miss Baier told her on numerous occasions that she had revoked her will and was making changes whereby Mr. Leighton and two others were to be omitted therefrom. Another witness for contestants, Eileen Davis, testified that Miss Baier called her on the telephone about Christmas time of 1957 and told her that she had voided her will. One Josephine Sheeran testified that shortly before her death Miss Baier told her that she had revoked her will. These witnesses were friends of the decedent—two of whom she had named as legatees in item 3 of her will.

In section 86 of vol. 1 of Mr. Redfearn's work, supra, we find the following rule—"Whenever the question is raised as to whether or not there has been a revocation by any destruction or obliteration, parol and other extrinsic evidence is necessarily admissible to show what acts were done by the testator and what his intentions were. A will cannot be revoked by parol declarations of the testator, as that would be contrary to law, but parol evidence as to what the testator did and as to what his declarations were, whether made before, at the time of, or after the alleged act of revocation, if concerning the act of revocation or attempted revocation, would be admissible. From such parol evidence, as well as from all other circumstances connected with the alleged revocation, it would be determined whether a revocation had taken place or not."

There is also evidence in the record to show that Miss Baier had become displeased with Mr. Leighton because he had failed to repay

an obligation, and had not given her the attention she had expected of him.

As against this the proponent produced as his witnesses Mrs. Mary Beatrice Collins, who testified that Miss Baier on two occasions, one shortly before her death, had told her that she had left everything to Mr. Leighton, and Mrs. Bobbie Miller, Mrs. Edith Thorburn and others who testified to the friendly relations existing between Miss Baier and Mr. Leighton up to the time of Miss Baier's death.

Highly significant in the mass of evidence produced by both sides in the case, in the opinion of the court, is an insurance policy on the life of the decedent in which she changed the beneficiary from Irvin J. Leighton to her executors, administrators or assigns on June 26, 1957, approximately three months after the date which appears on the margin of the will near the word "cancelled".

A careful consideration of the evidence as a whole and the surrounding circumstances of the case leads me to the conclusion that the preponderance of the evidence is in favor of the respondent-contestants.

It is therefore ordered, adjudged and decreed that the petition of Irvin J. Leighton for the probate of the purported last will and testament of Helen Louise Baier, dated August 12th, 1954 and filed herein, be and the same is hereby denied, and that the said will was cancelled by the testatrix animo revocandi, and is void and of no effect.