501 So.2d 1365 (1987)
Hilton Vincent PIPKIN and Sears, Roebuck & Company, Appellants/Cross Appellees,
v.
Robert T. HAMER, et Ux., Appellees/Cross Appellants.
No. 85-1147.
District Court of Appeal of Florida, Fourth District.
January 28, 1987.
Rehearing Denied March 6, 1987.
Jeanne Heyward, Miami, and Dickman, Green & Murphy, Fort Lauderdale, for appellants/cross appellees.
Thomas D. Lardin and Marilyn P. Liroff of Weaver, Weaver, Lardin & Liroff, P.A., Fort Lauderdale, for appellees/cross appellants.
PER CURIAM.
This is an appeal of a final judgment in favor of plaintiffs/appellees. We affirm.
On February 1, 1982, there was a collision between an automobile owned and operated by Robert Hamer, and a van owned by Sears, Roebuck & Company and driven by its employee Hilton Vincent Pipkin. Hamer and his wife, Muriel B. Hamer, filed a complaint for a lengthy list of damages incurred by Mr. Hamer as a result of the accident. The plaintiffs alleged negligence of the driver in the course and scope of his employment, causing the harm to Hamer; and negligent entrustment of the vehicle by Sears, who knew or should have known that Pipkin was an unsafe or unskilled driver. They sought both compensatory and punitive damages, the latter because of the allegedly unsafe state of the van, which Sears intentionally failed to repair; and Mrs. Hamer sought damages for loss of consortium.
The defendants answered, denying all material allegations, and stating as affirmative defenses (1) Hamer's comparative negligence (2) damages to Hamer below the statutory threshold for suit (3) set-off for all medical or PIP benefits paid or payable to the plaintiff. Later the defendants added a seat belt defense to their affirmative defenses. The trial court subsequently issued an order striking the affirmative defense of comparative negligence. In the same order the court denied the plaintiffs' motion for partial summary judgment as to the seat belt defense.
Pretrial conference was initially set for May 14, 1984, with the case set for trial in the ensuing two week period. Because Hamer was still being treated, the trial was continued.
By trial order dated October 25, 1984, the trial court ordered, inter alia  using a prepared form  the following:
1. Case is set for trial during the two week period of March 4, 1985, and calendar call is set for 9:00 a.m. in Room 905 on March 1, 1985, at Broward County, Fort Lauderdale, Florida.

*1366 2. That a pretrial conference pursuant to Rule 1.20 [sic], Florida Rules of Civil Procedure, to consider all matters suggested therein to simplify the issues and expedite the trial or other disposition of the case, shall be held on February 20, 1985, at 3:20 p.m., in chambers at Fort Lauderdale, Florida, and that each party shall be represented at said conference by an attorney who has full authority in the case as to settlement negotiations and case stipulations.
3. Thirty days prior to said conference, each party shall furnish all information required by Rule 1.280(b)(3)(A). No other expert testimony shall be permitted at trial except as provided in paragraph 5, infra.
4. That trial counsel shall hold a preliminary conference prior to the pretrial conference to do the following things:
a. submit for inspection all exhibits to be preoffered in evidence:
1. initial all exhibits for identification;
2. admit or not admit in evidence, all list specific objections, if any;
3. admit but question relevancy of exhibits;
b. stipulate as to any matters of fact and law about which there is no issue, to avoid unnecessary proof;
c. discuss any other matters which may simplify the issues or aid in the speedy disposition of the action;
d. discuss settlement.
e. draft a Joint Pretrial stipulation that shall be filed with the court prior to the date of the pretrial conference. The stipulation shall contain the following (without incorporation by reference to prior pleadings or dispositions):
(1) an itemized and specific list of facts that are jointly admitted;
(2) a list of issues raised by the pleadings that are abandoned;
(3) a list of the issues that remain to be decided;
(4) an itemized list of special damages that any claimant expects to prove;
(5) an itemized and specific schedule of each party's exhibits and proofs to be offered during the trial together with a list of all objections thereto;
(6) complete list of trial witnesses and their addresses, including all persons a party might call for impeachment, corroboration, or to adduce substantive proof, and regardless of the part of the trial in which they might appear, together with a brief description of the subject matter each witness will cover in his testimony;
(7) general stipulation concerning the issues and matters of proof;
(8) requested jury charges and verdict forms of each party;
(9) statement of the case to be announced to the jury;
5. No further discovery or depositions noticed for use at trial shall be permitted in this case subsequent to the date of the pretrial conference. No interrogatories or requests for admissions shall be served later than thirty (30) days prior to said conference. Exceptions shall only be upon stipulation, or with leave of court upon notice and hearing.
Rule 1.280(b)(3)(A), Florida Rules of Civil Procedure, referred to in the order at paragraph 3, describes the nature of matter pertaining to expert testimony that a party may require of another by interrogatory. This includes stating the identity of the expert witness, the subject matter on which the expert is expected to testify, and the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The above order evidently commanded the parties to exchange just such information respecting the expert witnesses they expected to call at trial.
Both parties filed papers entitled "Compliance with Trial Order" late in January 1985. The plaintiffs' paper listed thirteen expert witnesses  most of them physicians and other health professionals  stating briefly their specialties, and summarizing their expected testimony, both factual and opinion. Defendants' compliance paper listed three physicians by name  Dr. Alfonso *1367 Petti, an orthopedic surgeon; Dr. Willis N. Dickens, a neurologist, and Dr. James Jordan, a psychiatrist  indicated the specialty of each, and stated about each merely that he had done an independent examination, in his specialty, of plaintiff Robert T. Hamer.
Defendants filed a pretrial catalog on February 19, 1985. Their list of trial witnesses included the three above-named experts plus various other persons including the expert witnesses listed by plaintiffs in their compliance paper. Among those listed in defendants' pretrial catalog was Dr. George Levy. Defendants subsequently filed two amendments to their pretrial catalog, adding a total of three more trial witnesses, one of them Dr. Thomas Tuffs.
On February 20, 1985, plaintiffs moved to strike expert witnesses from the defendants' witness list, because of inadequate compliance with the order of October 25, 1984  quoted in pertinent part above  and specifically for not giving most of the types of information about their expert witnesses required pursuant to Florida Rule of Civil Procedure 1.280(b)(3)(A). According to plaintiffs' motion, their counsel had alerted the defendants' counsel to the deficiency, but to no effect. On February 22, 1985, the trial court granted the plaintiffs' motion to strike, limiting the defendants to the three experts listed and striking all other experts from the defendants' pretrial catalog and precluding their calling any other expert witnesses.
In their unilateral pretrial stipulation, filed for record on February 25, 1985, plaintiffs called to the trial court's attention that the attorney who appeared for the court-ordered conference preliminary to the pretrial conference (1) failed to bring exhibits for review and said she had no authority to stipulate or object to exhibits; (2) lacked authority to stipulate to facts and law; (3) lacked authority to discuss issues and simplify or aid in the disposition of the action, and (4) lacked authority to discuss settlement. These were, according to the court order quoted above, the heart of stated agenda for the preliminary conference. The plaintiffs again pointed out that defendants had not supplied the necessary summary of the expected testimony of their experts.
A hearing in this suit was held February 28, 1985. Appellant asked that the trial be held the second week of the scheduled period, because counsel was scheduled first before another judge. Plaintiffs/appellees' counsel objected in the belief appellants' real motive was to take further discovery of an Orlando neurologist, which would be in direct violation of the court order of October 29, 1984. Plaintiffs/appellees' counsel pointed out that defendants had twice been ordered to produce answers to interrogatories, and failed to appear for a hearing the same morning related to that discovery matter. She said she had just now learned that appellants planned to use Dr. Dickens' expert opinion concerning an electroencephalogram of Mr. Hamer that defendants had had in hand since 1982. She urged that appellants' flurry of last minute hearing treating doctors' depositions was prejudicial to plaintiffs, but enforcement of the order of October 29, 1984, whose contents were well known to counsel, could not be prejudicial to defendants. She urged that defendants should be limited to expert testimony reflected in reports plaintiffs' counsel had received.
Appellants' counsel urged he should be allowed to ask Dr. Dickens opinion testimony respecting reports plaintiffs had had since 1982, and that he should be allowed to question Dr. Levy, a treating physician, based on reports plaintiffs had had since 1983. He argued that Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981), allowed a witness to be called so long as prejudice did not result.
Plaintiff's counsel stated she had been prejudiced at deposition of Dr. Levy the previous day when Dr. Levy suddenly stated Hamer could have had no disc problem. Had she known defendants planned on such testimony she would have brought Dr. Levy a nuclear magnetic resonance scan that would have shown this was incorrect.
*1368 Much of the hearing concerned the defense's intention to use the testimony of an Orlando neurologist, named as a witness by the plaintiffs, but not yet deposed, respecting a later fall of Hamer, apparently to determine whether there was any connection of Hamer with the previous injury with which the present suit was concerned. The court said that physician could be deposed provided it was done in Broward County. The court left open whether the deposition or testimony would be admitted.
Appellee's counsel also contended there were still some exhibits defendants planned to use which she had not seen. She argued that to receive copies of x-rays at this late date would mean the expense of time and money of having to go over them with experts whom she had already met with in the last week or two in preparation for trial. Had the trial order been complied with, she said, much confusion would have been avoided. Defendants' counsel urged that any expert called by either party be allowed to be questioned about facts elicited before or at trial if they fell within the expert's area of expertise.
The court granted plaintiffs' counsel's motion in limine to limit the testimony of experts for the defendants to matter which could be derived from their reports previously available to plaintiff. The court said it could not put the plaintiffs' counsel, who had diligently and timely prepared in compliance with the order, in the position of having to prepare all over again at the last minute, or to have to ask for a continuance. The court also ruled defendants would have to pay the added costs incurred by plaintiff's counsel's having to meet again with witnesses she had already conferred with in preparation for trial. Defense counsel indicated that at trial he would first proffer testimony not foreshadowed by facts known to appellees' counsel, rather than bring it out before the jury before the court passed on its admissibility.
Ultimately trial was set to begin March 11, 1985, the second week of the period originally indicated in the trial order. Appellants/defendants had admitted negligence. Accordingly, evidence placed before the jury concerned damages only.
Robert T. Hamer, aged fifty-five, testified his car had a six way power seat. When he drove it the seat was as far down and back as possible, and fully tilted. His head was then about two of his fingers from the top of the car. On February 2, 1982, the car was rear-ended, and as a result Hamer had problems with his neck, upper and lower back and left knee, accompanied by continual pain. He claimed he suffered headaches; dizziness; under certain conditions, blurred vision; sexual dysfunction, and loss of sense of smell. Hamer had been an investment broker before the accident, and had gone back to the same kind of work after the accident, having substantial success, but claimed he had to give it up because he was physically unable to continue. He suffered a constant spasm or paralysis of the left arm.
Hamer could not recall whether he had actually hit his head in the accident. He had little recollection generally of the accident or what occurred right after the accident. He did not wear the seat belt at the time of the accident. He gained some seventy-five pounds after the accident, raising his weight to 305 pounds; he had since returned to his normal weight of about 230 pounds.
Based upon the evidence, the jury returned a verdict in favor of Mr. Hamer in the sum of $350,000.00. Defendants' timely motion for new trial was denied.
The issue is whether the trial court abused its discretion in refusing to allow defendants to introduce the complete testimony of three expert medical witnesses. We think not.
The proffered testimony whose exclusion from evidence appellants contest may be summarized as follows:
(1) Dr. Levy's testimony that the NMR test results of the cervical and lumbar areas of Hamer's spine showed degeneration but did not show any herniated discs. Dr. Sieber, testifying for Hamer, said the NMR scans showed one cervical disc and additional *1369 lumbar discs that were herniated; and also said that Dr. Levy had overlooked these conditions, which were confirmed by the NMR scans. Appellant's motion to strike Dr. Sieber's testimony concerning the NMR scans of the low back because it was untimely and prejudicial had been denied.
(2) Dr. Dickens' testimony that the April 1982 EEG showed no abnormalities related to the accident; that Hamer's subsequent fall was not related to the accident, and that the NMR scan failed to show brain damage. Although there was admitted similar testimony of Dr. Jordan and Dr. Levy, plaintiffs attacked Levy's testimony and rebutted with testimony of Dr. Appel; and Dr. Jordan's diagnosis was based on informal, orally obtained data, rather than objective physical or neurological tests, which appellants urge would carry more weight.
(3) Dr. Petti's testimony respecting x-ray results obtained soon after the accident but not reviewed by Dr. Petti until shortly before the trial. Petti's testimony would have been that Hamer's degenerative disc symptoms were already present immediately after the accident, and therefore could not have been caused by the accident.
Appellees argue (1) that the admission of the proffered testimony would have created surprise and prejudice for them, not having been brought up at deposition of these witnesses (2) that the denial may also be justified because the appellants did not adequately describe the testimony expected of the witnesses, as the court's pretrial order required, and (3) that comparable testimony reached the jury anyway and the defendants' closing argument covered these points; so that if there was error it was harmless.
Appellants' principal authority is Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981). The issue there was whether plaintiffs were properly permitted to present at trial the testimony of an impeachment witness they had not previously identified, in accordance with the pretrial order, to the defendant. The witness in question rebutted the testimony of the adverse party's expert on accident reconstruction.
Binger was first appealed to this court, whose opinion is reported at 379 So.2d 660 (Fla. 4th DCA 1980). This court reversed the judgment in the trial court and remanded for new trial. This court reasoned from the spirit of the discovery rules that the trial judge has broad discretion in resolving questions arising during trial, and in deciding questions such as that addressed in Binger should be guided by whether permitting the unlisted witness to testify would prejudice the objecting party. The Florida Supreme Court signified its essential agreement.
The Florida Supreme Court held in Binger that a pretrial order directing the parties to exchange the names of witnesses requires them to identify all substantive, corroborative, impeachment or rebuttal witnesses whose being called was reasonably foreseeable; no category of witnesses is automatically exempt from the dictates of a pretrial disclosure order. The court may obviously exclude the testimony of one not so listed, but the decision "should be largely guided by a determination as to whether use of the undisclosed witness will prejudice the objecting party." 401 So.2d at 1314. The court went on to explain that prejudice in this context refers not particularly to the fact the testimony is adverse, but to its being a surprise in fact to the objecting party. The court then furnished a list, not intended as exhaustive, of additional factors which may enter into the trial court's exercise of discretion:
Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intention, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness *1370 will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
Id. (footnote omitted).
Further text states that the object of requiring reasonable compliance with a pre-trial order is to avoid trial by ambush. The Florida Supreme Court then spoke directly to the operation of local court rules and customs:
We cannot talk about pretrial discovery without mentioning local pretrial practices. We have intentionally left room for the operation of local rules and customs within the broad parameters of our decision. Local customs regarding pretrial disclosure of witnesses vary throughout the circuits in Florida, and these variations can and should continue. For example, in some circuits the pretrial disclosure order not only directs that witnesses' names be exchanged, but expressly prevents the testimony of any witness not identified within a certain period of time. In other circuits, it is common for the order to exempt by category certain types of witnesses from being listed.[11] Another local practice requires that counsel for each party demand witnesses' names before a court order is entered or in lieu of a court-directed exchange of names. These local variations in discovery practice within the circuits of Florida in no way derogate from our decision, and we leave their interpretation and application, within the stated goals of discovery, to the presiding trial judge in each case.
[11] See Mall Motel Corp. v. Wayside Restaurants, Inc., 377 So.2d 41 (Fla. 3d DCA 1979) (pretrial disclosure order specifically excluded impeachment witnesses).
Id.
We think the circuit court's trial order quoted at some length above is a reasonable exemplar of local practice of the kind for which the Binger court left room. Arguably  but we do not so say  the Binger prejudice test need not be independently applied when, as here, a party has flouted an order which set reasonable deadlines for divulging the nature of expert testimony to be placed in evidence and for completion of discovery. Be that as it may, we think it clear that here plaintiffs would have been prejudiced by admission into evidence of last minute expert opinion; and the alternative  to continue the trial  would have been unfair both to the plaintiffs, who had assiduously complied with the trial order, and to other litigants before the court, which doubtless had a congested calendar. Counsel who disobeys a trial order which was entered months earlier, and whose nature and content could have come as no surprise even at that early time  for it is apparently the standard procedure of that court  should not be rewarded for his conduct.
GLICKSTEIN, DELL and STONE, JJ., concur.