936 So.2d 35 (2006)
Luis SANCHEZ, Appellant,
v.
Joseph MONDY and Matilde Mondy, Appellees.
No. 3D06-131.
District Court of Appeal of Florida, Third District.
July 19, 2006.
Rehearing Denied September 7, 2006.
*37 Anthony F. Sanchez, Miami, for appellant.
Ron Cordon, for appellees.
Before RAMIREZ, and WELLS, JJ., and LEVY, Senior Judge.
WELLS, J.
Luis Sanchez appeals from a final judgment denying specific performance of a real estate contract. Sanchez claims that the trial court erred in relying on the testimony of a handwriting expert in denying relief.[1] We agree and reverse.
The sole issue below, and ultimately here, is whether Matilde Mondy, who co-owned a duplex in Little Haiti with her husband Joseph Mondy, signed a contract to sell this property. The undisputed testimony was that in May 2003, Joseph and Matilde's daughter contacted Pauline Lopez, a longtime neighbor and Coldwell Banker agent, to list the Little Haiti duplex for sale. The property was initially listed at $150,000, later reduced to $140,000, and then re-listed for $140,000 in November 2003. Both Joseph and Matilde Mondy executed the listing agreements, the latter being executed by both Mr. and Mrs. Mondy while in Ms. Lopez's presence.
In December 2003, Dr. Sanchez, a retired physician, offered to purchase the duplex. Following negotiations conducted by Ms. Lopez, Mr. Mondy agreed to sell the duplex for $132,000. A sales contract was prepared by Ms. Lopez and executed by Dr. Sanchez in Ms. Lopez's presence. Ms. Lopez then took the contract to the Mondys' home for execution. At this point the facts presented by the parties diverge.
According to Ms. Lopez, when she arrived at the Mondy home, Mrs. Mondy answered the door and ushered her in. Lopez claims that Mrs. Mondy knew that she was there to have a sales contract executed, but claiming illness, retired to her bedroom to rest while Ms. Lopez went over the contract with Mr. Mondy in the living room. Ms. Lopez further testified that after discussing the terms of the contract with Mr. Mondy, he executed it, after which the Mondys' adult daughter, Natasha, took the contract into the bedroom where it was signed by Mrs. Mondy. After receiving the fully executed contract, Ms. Lopez left. According to Ms. Lopez, she did not hear from the Mondys again until shortly before the scheduled January 2004 closing when Mr. Mondy called to advise her that he did not want to sell because the sales price was too low.
The Mondys subsequently were notified by both telephone and by mail (delivered by Federal Express) of the closing of the sale but neither attended. After a number of telephone calls from the closing agent, Mrs. Mondy and a male acquaintance appeared at the closing agent's offices where the closing agent reviewed the contract with them and where, according to the closing agent, Mrs. Mondy acknowledged that her initials were those affixed to the bottom of each page and that it was her signature affixed to the contract.
*38 With the exception of agreeing that Mr. Mondy signed the sales contract in the presence of Ms. Lopez at his home and that neither he nor his wife appeared for the closing, the testimony elicited by the Mondys contradicted this evidence in every respect. The Mondys' daughter denied that she was at home when Ms. Lopez brought, and Mr. Mondy executed, the contract. Mrs. Mondy denied having signed the contract or acknowledging to the closing agent that she had initialed or signed the contract. And Mr. Mondy testified that although Mrs. Mondy was at home when Ms. Lopez brought and he executed the sales contract, Ms. Lopez left without obtaining Mrs. Mondy's signature "because she [Mrs. Mondy] is not the one selling houses. I am the one selling houses."
On the record, the trial judge observed that he believed the testimony of the real estate and closing agents and that he found that the Mondys' testimony was not credible.[2] He nonetheless ruled in the Mondys' favor, after concluding he was bound by the testimony of a handwriting expert called by the Mondys, who opined that the person who signed a number of unauthenticated specimen documents purportedly belonging to Mrs. Mondy was not the same person who signed the sales contract.
The trial court erred in concluding that the testimony of the expert mandated a decision in the Mondys' favor. At common law it was not possible to prove that a signature or writing was genuine by comparing it with any other signature or writing; however in the interest of promoting the administration of justice in cases where comparisons of disputed writings were properly made, the harsh rule of the common law was abolished by what is now section 92.38 of the Florida Statutes.[3]Chem. Corn Exch. Bank & Trust Co. v. Frankel, 111 So.2d 99, 100-01 (Fla. 3d DCA 1959); see Thompson v. Freeman, 111 Fla. 433, 149 So. 740, 743 (1933).
Section 92.38 provides:
Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by the witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the jury, or to the court in case of a trial by the court, as evidence of the genuineness, or otherwise, of the writing in dispute.
Under this provision, the trial court must be satisfied that the comparison standard offered is genuine before admitting it as the standard. Pate v. Mellen, 275 So.2d 562, 563 (Fla. 1st DCA 1972). This requirement "can be met by evidentiary proof presented to the judge, or by admission of its genuineness by the parties in the pleadings or before the court, or when it is in evidence before the court in the case for some other purpose." Barron v. State, 207 So.2d 696, 697 (Fla. 3d DCA 1968). However, none of the three alternative means of proving genuineness was demonstrated in the instant case, and the specimens used for comparison by the expert correctly were not admitted *39 into evidence.[4] Because there could be no comparison of handwriting without the writings by which the comparison was made being properly before the court, Thompson, 149 So. at 743, the trial court should not have allowed and relied on the expert's testimony comparing the sales contract with those documents.
Considering the trial court's express reliance on the handwriting expert's testimony in ruling in the Mondys' favor, this error cannot be deemed harmless and mandates reversal. See Centex-Rooney Const. Co., Inc. v. Martin County, 706 So.2d 20, 26 (Fla. 4th DCA 1997).
We also believe that Dr. Sanchez was effectively sandbagged by this testimony. This action initially was set for trial for the two week period commencing June 20, 2005. The pre-trial order required both parties to identify all expert witnesses and the subject matter and the substance of the facts and opinions about which each expert was expected to testify no later than sixty days prior to the trial period set, in this case by approximately mid-April of 2005. It was not, however, until May 31, 2005, that the Mondys notified Dr. Sanchez of their intention to call a handwriting expert, and it was not until long after that date that the Mondys actually identified the expert they intended to call. In the meantime, discovery was cut off by court order. Although Dr. Sanchez filed a motion in limine to preclude the testimony of this witness, the motion was not heard until the witness was actually called to testify. Thus, while cross examination was permitted, the sequence of the trial court's rulings effectively precluded any meaningful opportunity for Dr. Sanchez to adequately prepare for this expert's testimony or to take those steps that would put Dr. Sanchez on equal footing with his adversaries. This, we believe, was tantamount to trial by ambush. See Pipkin v. Hamer, 501 So.2d 1365, 1370 (Fla. 4th DCA 1987) (confirming that the object of requiring reasonable compliance with a pretrial order is to avoid trial by ambush).
The unfairness of what occurred is heightened by what we cannot help but observe was the sheer implausibility of the expert's conclusions and is yet another reason why this testimony should never have been relied on.[5]See Hajianpour v. *40 Maleki, 932 So.2d 459, 464 (Fla. 4th DCA 2006) ("When the expert's opinion is based on speculation and conjecture, not supported by the facts, or not arrived at by recognized methodology, the testimony will be stricken.").
Accordingly, we reverse the final judgment in the Mondys' favor and remand for entry of a new judgment without consideration of the handwriting expert's testimony.
NOTES
[1] The trial court cited to section 725.01 Florida Statutes, which is a part of the Florida Statute of Frauds, requiring a contract for the sale of lands to be in writing and signed by the party to be charged.
[2] Among other things, when shown her signature (notarized by her attorney) on her affidavit in opposition to Dr. Sanchez's motion for summary judgment, Mrs. Mondy unequivocally denied that it was her signature. Only after a convoluted argument from her attorney regarding a distinction between the words "signature" and "sign" in Creole, did Mrs. Mondy testify that she did not know what the word "signature" meant but that she did sign the affidavit.
[3] Previously numbered section 90.20.
[4] Throughout the expert's testimony, Dr. Sanchez's counsel objected to the use of the comparison specimens because they were not in evidence, because they consisted of photocopies rather than original specimens of Mrs. Mondy's signature, and because there was no evidence that the specimen documents either belonged to Mrs. Mondy or that they had in fact been signed by her. The comparison specimens were not admitted into evidence and when the Mondys' counsel pointed to the listing agreement, which was in evidence and which Mrs. Mondy admittedly had signed, the expert advised the court that she could not form an opinion based on an in-court review of this document.
[5] The expert's opinion that the same person did not sign the specimen documents and the sales contract was predicated on comparison of the signatures on photocopies of six specimen documents with the sales contract. While admitting that utilizing photocopies rather than originals made any comparison suspect, the expert nonetheless opined that the photocopied specimen signatures were not made by the same person who signed the sales contract because: (1) Mrs. Mondy's first name, Matilde, was spelled "Matilde" on the specimens but "Maltide" on the contract; (2) Mrs. Mondy's first name was written in cursive on the specimens but printed in part on the contract; and, (3) the letters "dy" at the end of Mondy in the specimens were of equal height while the "d" in Mondy on the contract was twice as high as the "y."

In light of the fact that the expert did not know whether the specimens she examined actually belonged to Mrs. Mondy or whether Mrs. Mondy had actually signed them, it would appear that the expert's opinion that the person who signed the specimens was not the same as that who signed the sales contract was simply not relevant to whether Mrs. Mondy was the person who signed the sales contract. See § 90.401, Fla. Stat. (2005) ("[r]elevant evidence is evidence tending to prove or disprove a material fact"). Additionally, the expert's admission that spelling differences alone would not support a conclusion that the signatures on the specimen documents and the sales contract were made by different people, combined with the fact that there is no consistency whatsoever in the comparative heights of the letters "dy" in the word Mondy in those documents bearing Mrs. Mondy's signature that were introduced into evidence, confirms that the expert's testimony was sheer sophistry.
Moreover, Mrs. Mondy's signature on the renewal listing agreement (Exhibit 9 in evidence), a signature not disputed as being hers and not provided to the expert, is virtually identical to Mrs. Mondy's signature on the sales contract. Mrs. Mondy's first name on the renewal listing agreement is spelled "Maltide" just as it is on the sales contract; Mrs. Mondy's first name on the renewal listing agreement is printed, rather than written in cursive, just as it is on the sales contract; and, the "d" in Mondy on the renewal listing agreement, is almost double the height of the "y" just as it is on the sales contract. Thus, on this record, even if relevant, the expert's opinion was too speculative to support a judgment in the Mondys' favor.