No. 16,629.

McKENNA v. THE PEOPLE.

(235 P. [2d] 351)

Decided July 30, 1951.   Rehearing denied August 20, 1951.

Mr. Hildreth Frost, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Norman H. Comstock, Assistant,. for the people.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

Plaintiff in error, hereinafter designated as defendant, seeks reversal of his conviction of first degree murder. In the information, he was charged with being an accessory to the death of one Harold Bechtelheimer, a highway patrolman, by the hand of one Valenzuela. Since the defendant neither testified, nor offered evidence in his own behalf, the factual situation presents no material conflict; however, we believe that a brief summation thereof should be set out in this opinion.

At about 10:30 o'clock p. m. on the evening of September 14, 1949, Officer Bechtelheimer was found dead in a state patrol car beside Highway No. 85, about 4.7 miles from Colorado Springs and a short distance south of what is known as Breed Underpass on said highway. Expert testimony fixed the time of death at or about ten o'clock p. m., and the cause, a gun shot. At the scene of the shooting, officers found three 32 caliber cartridge shells and the two pieces of a broken front button from the patrolman's shirt. The motor of the patrol car was running and the parking lights were on.

At about half an hour past midnight of that same night, Valenzuela was taken into custody at the Alamo Hotel in Colorado Springs, and when arrested, the officers found a 32 caliber Savage automatic pistol loaded and cocked ready for action, under his pillow. He had registered at the hotel under the name of Ortiz.

According to the opinion expressed by a special agent of the Federal Bureau of Investigation who testified as a witness on behalf of the people, the three empty cartridge shells found by the officers at the scene of the shooting were fired from the gun taken from Valenzuela.

At about eleven o'clock a. m., September 15, 1949, defendant was taken by officers from a north-bound bus a short distance out of Colorado Springs, and placed in custody. In the interim, the officers had found a 1949 Buick sedanette, bearing Oregon license plates, with a bullet hole in the left-side door; also, certain articles of luggage apparently disposed of hurriedly and partially concealed in various places in the vicinity of the Alexander Film Company just north of the city limits of Colorado Springs. It also was learned that on the evening before, the proprietor of a liquor store at Castle Rock had been held up at the point of a gun and approximately $200 taken from him. There was taken from Valenzuela upon his arrest, $133.00, and from the defendant $26.00, a particular one-dollar bill of the currency taken from defendant later being identified by the owner as in the currency taken from his store. Other facts were mostly ascertained from admissions made by Valenzuela and plaintiff in error.

Combining these statements, it appears that Valenzuela and a friend some time prior to September 12, 1949, came to Denver from Lincoln, Nebraska. After arrival in Denver they were apprehended by police officers, Valenzuela being soon released, but his friend being incarcerated in the city jail because of inability to pay more than $55.00 of the $75.00 fine imposed on him for carrying a concealed weapon. Valenzuela, then anxious

to procure additional funds to pay the balance of his friend's fine, began looking about for ways and means by which this might be accomplished. On September 12 he met defendant, with whom he had formerly been acquainted, and who then moved in with and occupied his room in the Glenarm Hotel. During the next couple of days, various petty thefts were committed by the two in and about the city of Denver, the proceeds of which were insufficient for the purposes desired. Valenzuela on two occasions suggested that he sell his automatic pistol, to which suggestion defendant objected, and said that it should be "put to work" as a means of raising the funds necessary to release the jailed friend. In the afternoon of the 14th of September, Valenzuela and defendant definitely decided upon committing robbery, and thereupon and shortly after dark, they found unlocked and took from a street in Denver the 1949 Buick sedanette to which we have hereinabove referred. They placed in the car the personal belongings of themselves and their incarcerated friend, and drove southward on highway 85. On arriving at Castle Rock they decided to rob the liquor store. Defendant remained in the car, and Valenzuela with his gun perpetrated the robbery, during the course of which he threatened to kill the proprietor, and did strike him several times with the gun.

Defendant at all times drove the car. After leaving Castle Rock they proceeded at a very high rate of speed. An odor, that they took to be burning rubber, attracted their attention, and they pulled out on the shoulder of the highway to make inspection. Valenzuela had either gotten out or was about to get out of the car when Patrolman Bechtelheimer approached on the driver's side, and started to talk to defendant. Valenzuela came around the rear of the car, stuck his gun in the patrolman's back, and said "hold it." The patrolman swung about with only his flash light in his hand and exclaimed "why you." Valenzuela fired three shots. The patrolman's gun when found contained six empty shells. Defendant got out of

the car, stepped around to the opposite side, and at about the time the shooting was finished was back in on the driver's side. Valenzuela jumped in on the right side, and they hurriedly left, each inquiring of the other if he had been hurt, but neither paying any attention to the patrolman who had been fatally wounded. Upon approaching Colorado Springs they turned off near the location of the Alexander Film Company property, hastily threw the luggage in various places of partial concealment, and separately departed the scene on foot.

Defendant presents seven assignments of error, which may be consolidated, as follows: (1) Erroneous admission of evidence; (2) refusal of the court to give certain tendered instructions; (3) general error, without specification other than to say that the same arises because of specified, as well as other alleged error committed during the trial.

I.

■ (a) Witness Williams, special agent of the Federal Bureau of Investigation, testified in effect that the 32 caliber shells found at the scene of the shooting had been fired from the 32 automatic pistol taken from Valenzuela, and that his conclusion in this respect was based upon microscopic examination by two microscopes arranged in such a manner that the exhibit shell and his test shell both could be seen at the same time. Objection on behalf of defendant was interposed on the ground that since it was possible to make and present a micro-photograph, the witness should not be permitted to testify as to his conclusions without producing such microphotographs for the jurors' inspection. The witness testified on cross-examination that certain details could be seen through the microscopes which could not have been accurately depicted on a microphotograph. The adverse ruling of the court on this objection, defendant assigns as error. In speaking of the testimony of an expert witness respecting peculiarities of a cartridge shell, the supreme

court of Montana in *State v. Vuckovich,* 61 Mont. 480, 494, 203 Pac. 491, 495, said: "Evidence of experiments made out of court and not in the presence of the jury are admissible upon the same principle as the experiments which are conducted in the jury's presence." Further citations may be found in the annotation in 66 A.L.R. at page 373.

▪ (b) Over the objection of defendant, the Court permitted witness Enderud, proprietor of the robbed liquor store at Castle Rock, to testify with respect to that occurrence. The court correctly determined that this evidence was admissible in establishing the guilt of Valenzuela, which was a necessary element of proof in the case against defendant, and the jury then was instructed that said evidence was being received for that purpose only.

(c) Witness Close, a police officer, testified concerning the admissions of Valenzuela. Counsel for defendant assigns the admission of this testimony as error. His objection is that the evidence was offered before the corpus delicti was established, and he also attacks the voluntariness of the confession. Prior to the offering of this evidence, it had been definitely established that death had occurred to patrolman Bechtelheimer and that such death was the result of a felonious act on the part of some person.

▪ As a third ground, defendant's counsel contends that the admissions of Valenzuela cannot properly be used as evidence against defendant, the same having been made out of his presence and several hours after the arrest of Valenzuela.

Upon all of these points the law is well settled in Colorado, and it is unnecessary to cite numerous authorities on the point. If any error was committed by the trial court, it was in confining the admissibility of the admissions of Valenzuela to the issue of proof of his guilt, in accordance with an admonition then given to the jury to that effect. We will limit ourselves to a few citations, in

which may be found many others. *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5; *Walker v. People,* 88 Colo. 264, 295 Pac. 787; *Bruner v. People,* 113 Colo. 194, 156 P. (2d) 111; *Williams v. People,* 114 Colo. 207, 158 P. (2d) 447.

## II.

■ Counsel for defendant alleges error on the part of the trial court in his refusal to give defendant's tendered instructions numbers 2 and 3. Number 2 is the regular stock instruction defining manslaughter, and number 3, if given, would inform the jurors that they were bound by the exculpating statements contained in Valenzuela's confession in respect to this defendant, unless such statements were otherwise disproved.

Was defendant entitled to an instruction defining manslaughter? Defendant's counsel is correct in his argument that when there is in any case evidence, however slight, and regardless of its probability, which tends to reduce a homicide to the grade of manslaughter, defendant is entitled to an instruction thereon. In opposition to that principle, there is another of at least equal antiquity and respectability, first announced in Colorado in *Smith v. People,* 1 Colo. 121, and since then many times affirmed, to the effect that when there is no evidence in the case by which a jury could possibly be justified in returning a verdict of manslaughter, no such instruction should be given. Here we have the picture of a pair of admitted criminals, at the time fleeing from the scene of their latest felony in a stolen automobile at an excessive rate of speed with the loot of their last crime in said automobile, apprehended by an officer of the law in a courteous manner, he then apparently not knowing their identity or anything of their history. They, being fearful that he would discover same, in order to make good their escape, deliberately shot and killed the officer with no justifiable excuse or provocation whatever. The very essence of the manslaughter instruction is that the killing must be preceded by "a serious and highly pro-

voking injury inflicted upon the person killing," or an attempt threat. No such situation appears in this case; furthermore, there resulted no prejudice to defendant by reason of the court's refusal to give the manslaughter instruction. There is no logical reason to assume that a jury which might have returned a verdict of second degree murder, but instead returned one of murder of the first degree, would have for one moment entertained returning a verdict of manslaughter.

▇ Tendered instruction number 3 likewise is improper as it calls particular attention to one element of the evidence, whereas the practice has been to eliminate such procedure and instruct the jury in general terms. This, the court did in its instruction number 19, whereby it informed the jurors that they were to consider all of the evidence in the case.

### III.

▇ Under the heading of general error, as one element thereof, defendant's counsel submits that a new trial should be granted because of newly discovered evidence. He presents an affidavit of Valenzuela wherein it is stated that if called as a witness, he would in several particulars clarify, and in some instances dispute, the testimony concerning admissions attributed to defendant as well as to himself. This matter was presented to the trial court and by it rejected. We think correctly so, because first, Valenzuela apparently was available as a witness at the time of defendant's trial, and secondly, anything offered by his affidavit would not be "newly discovered," but merely cumulative of the evidence presented at the trial.

▇ Lastly, under this general assignment, apparently it is attempted to create a catchall, and presents a situation where ordinarily this court would not be required to make any rulings because of the lack of particular specifications of error. We have, however, because of the nature of the case and the manner in which it has been

presented to us, carefully and painstakenly inspected and considered the entire record. As a result, we are more confirmed than ever in our belief that the defendant in every respect had a fair trial; that the evidence is ample to justify the verdict of the jury; and that the trial court proceeded with all due and proper caution throughout the trial to see that the interests of the defendant were in every way and manner protected under the law. In his third instruction the trial court defined for the jurors the material allegations of the information, and admonished them that the burden of proof was upon the people to prove each of said material allegations beyond a reasonable doubt. Then again by his ninth instruction, he cautioned the jury that even though it should find from the evidence beyond a reasonable doubt that the patrolman was killed at the time and place in question, that the defendant was present at such killing; that such killing was murder; nevertheless, if the jury be not satisfied from the evidence beyond a reasonable doubt that defendant had conspired with Valenzuela to resist arrest and to kill if necessary, or if the jury was not satisfied from the evidence beyond a reasonable doubt that defendant had abetted, advised or encouraged Valenzuela in the killing, then it should find defendant not guilty, and this, even though he subsequently failed to disclose the killing, or even concealed the same. What greater caution could be given to a jury? It is certain that, considering all the evidence, the jury believed, and we think properly, that defendant did cooperate with Valenzuela in the commission of unlawful acts; that he did aid, abet and assist Valenzuela in the attempt to escape and in the commission of the murder of the patrolman, whom they felt might prevent their escape. It is not necessary that persons implicated in crime shall have reached a formal or distinct agreement either orally or in writing as to the exact procedure in the accomplishment thereof. *Bacino v. People,* 104 Colo. 229, 90 P. (2d) 5. That one charged as accessory to crime had knowledge of the principal's

intention, coincided therewith and cooperated in his efforts, may be established by reasonable inference from other established facts and circumstances. "Whether or not the testimony is sufficient to justify a conviction is for the jury." *Mulligan v. People, supra.*

■ Where two or more persons associate in the commission of criminal acts and agree to stand together and see them through, and in the course of such criminality one of them kills another, each is equally guilty in the eyes of the law. This is no new theory of law. It is as old as the hills. In Wharton on Homicide (2d ed.), page 278, section 338, we find the following rather quaint statement apropos of the foregoing: "Malice, in such a killing, may be inferred as a presumption of fact from the nature of the design and the character of the preparations; whether the deceased fell by the hand of the accused in particular, or otherwise, is immaterial."

Numerous Colorado decisions might be cited upon the various topics hereinabove discussed, and we do not call attention to the case of *State v. Lord,* 42 N.M. 638, 84 P. (2d) 80, so much as an authoritive citation, but because of the detailed discussion in that opinion of various matters herein considered. It is an interesting citation from that standpoint. In our own state the principle goes back to the case of *Smith v. People, supra,* and follows through to the present day.

For the reasons herein set out, the judgment of the trial court is affirmed.

Mr. Justice Hilliard not participating.