## No. 17,621.

JOHN ROBERT HARDY *v.* PEOPLE OF THE STATE OF COLORADO.

(292 P. [2d] 973)

Decided January 30, 1956.

Mr. EDWARD C. HASTINGS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN B. BARNARD, JR., Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

JOHN ROBERT HARDY was convicted of murder in the first degree and sentenced to a life term in the penitentiary. He is here by writ of error seeking a reversal of the judgment.

The evidence discloses that at about 10 o'clock on the night of November 26, 1953, defendant shot one Arthur Kautz with a shotgun, resulting in immediate death. At defendant's request, one of his minor children called the sheriff, who came to the scene of the shooting shortly after its occurrence, and there found the deceased lying within a few feet of his automobile, and took defendant into custody.

At approximately 11 o'clock A.M., on November 27, 1953, in the county jail at Fort Morgan, Colorado, defendant was questioned by the district attorney and his deputy, and the sheriff of Morgan County and his deputy, and a transcript of questions and answers was made by an official court reporter who at the trial identified and swore to the accuracy of the transcribed statement containing questions and answers, which statement was offered by the district attorney and received in evidence with the express consent of defendant's counsel.

The following was elicited from the defendant by the questions asked him: He and his wife and minor children resided at Snyder, Colorado. On November 26, 1953, defendant, after an absence in Omaha, Nebraska, returned home at about 6 o'clock P.M. and found that his wife and children were absent. It appears that for some considerable time defendant and his wife were in a domestic turmoil because of the relationship between the wife and one Kautz, and when he found her absent from their home he suspicioned that she and deceased were out together. He found an unloaded two-barrel shotgun on a couch in a room of his home, but found no shells for it. He went a distance of three or four blocks to the house of his mother-in-law and there induced his nine-year-old niece to give him two shotgun shells. At

the time he received them he told her, according to her testimony, that he was going "up to the house and wait for Art [Kautz] and Aunt Thelma [defendant's wife] until they come, and he was going to shoot at him but wasn't going to hurt him, just break a leg or two, and he says he was going to ruin him but wasn't going to kill him, so I gave him the shells." Defendant then returned to his home, loaded the shotgun, and waited for his wife and Kautz to return. At about 10 o'clock P.M. defendant's minor children came into the house, and one of them "broke" the shotgun, discovered the shells in it, and expressed surprise, stating that there were no shells for the gun and asked defendant where he had procured them.

The children advised him that "they"—meaning Kautz and their mother—were outside, and defendant again loaded the shotgun and left the house. He broke the window on the driver's side of the automobile in which defendant's wife and Kautz were seated by striking it with his shotgun, and ordered them out of the car. Defendant's wife immediately ran from the scene, and when Kautz stepped out, the defendant immediately pointed the shotgun at him and stated, "I am going to kill you." Deceased walked a step or two toward defendant, who stated that he backed up a short distance, and when deceased, who was unarmed, was within three feet of defendant, he fired the shotgun, striking the deceased in the chest, causing immediate death.

There had been several altercations between defendant and Kautz with reference to the relationship between deceased and defendant's wife, and defendant had told the deceased "a dozen times" that he would kill him. It appears that in a previous altercation between defendant and Kautz, when defendant had a club and was going to use it on Kautz, that Kautz had a small automatic pistol which effectively terminated the altercation, although it was not used. When defendant was asked about his possession of the two shotgun shells, he stated

that it was his intention to use one of them in a suicidal attempt after he had shot Kautz. Defendant also stated that notwithstanding his numerous threats to kill Kautz, and his definite and emphatic statement just before the fatal shot was fired, he intended to shoot Kautz in the legs rather than to inflict a mortal wound. Testimony of other witnesses called by the prosecution corroborated in all material respects the admissions made by defendant.

At the conclusion of the evidence, defendant called one witness who was a deputy sheriff, and this witness' testimony, except as it was corroborative of the people's testimony, added little to that already related.

Defendant's counsel made no objection whatever to any instruction given by the court to the jury, but tendered three instructions which the court refused to give, and this refusal, together with a general objection that the evidence was insufficient to support the verdict of the jury, formed the basis of defendant's motion for a new trial.

One of the three instructions which defendant tendered and which the court refused to submit to the jury related to the crime of manslaughter; the other two related to self defense.

The trial occurred on March 8, 1954, and the jury's verdict was received on March 9, 1954. Defendant was allowed ten days within which to file his motion for a new trial, and, although the record shows that no extension of time was granted, it was not filed until May 1, 1954, and was argued and denied on May 11, 1954. Sentence was then pronounced in accordance with the verdict of the jury and defendant committed to the state penitentiary.

Thereafter and on December 13, 1954, counsel other than those engaged in defendant's defense at the trial filed a "Motion for Leave to File Amended Supplemental Motion for New Trial" and on December 29, 1954, tendered their amended and supplemental motion for new

trial. On the same day a hearing was had and the motion was denied.

In the brief of plaintiff in error we find the following:

"We must consider that the whole of defendant's defense *rested upon self-defense.* Denial by the trial judge to give instructions defining the law pertaining to self defense in effect put the defendant in a position of advancing no defense * * *" (Italics ours.)

However, in counsel's brief appears a subdivision entitled "Misconduct of Plaintiff's Counsel" and one entitled "Original Motion for New Trial Should Have Been Granted."

█ The court did not err in denying the amended and supplemental motion for new trial. We take judicial notice of the fact that there are two terms of the district court in Morgan County, Colorado, one commencing on the first Tuesday in March and the second on the second Tuesday of September each year. C.R.S. '53, 37-3-14. The trial was begun on the 8th day of March, 1954, which was during the March, 1954, term, which, according to the statute, ended on the second Tuesday in September, 1954. The March, 1954, term having been ended at the time defendant tendered his amended and supplemental motion for new trial, the court was without jurisdiction to entertain the same. *Saleen v. People,* 41 Colo. 317, 92 Pac. 731; *Smith v. People,* 120 Colo. 39, 206 P. (2d) 826.

█ Counsel make an unequivocal statement that in *Kidder v. People,* 115 Colo. 72, 169 P. (2d) 181, "this court recognized the injustice of the rule [announced in Saleen v. People, supra] and notwithstanding the amended motion was filed after the expiration of the term reversed the judgment of the trial Court." Defendant's counsel should be cautious in making definite and emphatic statements without first ascertaining the accuracy thereof. It should be observed that in *Kidder v. People, supra,* the trial was begun and the jury returned its verdict on December 6, 1944, and there was no order fixing the time within which a motion for new trial was

to be filed. A motion for a new trial was filed on December 29, 1944, and denied on February 13, 1945, all during the November, 1944, term of the district court. Kidder was, on February 19, 1945, sentenced to a term in the penitentiary. Kidder thereafter retained other counsel, who, on April 11, 1945, during the March, 1945, term of the district court, moved for leave to file an "Amended and Supplemental Motion for New Trial" which motion was, on April 11, 1945, denied. In our opinion in the Kidder case, supra, we held that the question of the sufficiency of an information to charge a crime could be raised in the supreme court for the first time, notwithstanding its legal sufficiency was not questioned under the provisions of C.R.S. '53, 39-7-7. We also on our own motion took cognizance of the fact, as disclosed by the record, that defendant's rights were not properly safeguarded by his counsel during the trial, and neither did his counsel properly present available evidence. The trial court in the Kidder trial followed our decision in *Saleen v. People, supra,* and nothing in our opinion therein justifies counsel's statement hereinabove quoted.

2. Defendant's present counsel contends that error was committed by the court in failing to give defendant's tendered instructions on self defense. There is no evidence in this record justifying an instruction on self defense. Defendant's own statement irrefutably establishes beyond peradventure of a doubt that defendant was the assailant; that he waited for approximately four hours for deceased's appearance, and upon going out to accost his wife and deceased, he loaded the shotgun; broke the car window with it, and when deceased stepped from the automobile uttering not a word, defendant then and there put in effect his oft-repeated threat that he would kill the decedent, again stated, "I am going to kill you" and proceeded to do so. Had there been evidence, however slight and however improbable, tending to reduce the homicide to the grade of man-

slaughter or which would have justified an instruction on self defense, then it is conceded that such instructions should have been given. However, the record before us is barren of any evidence justifying an instruction under either of these statutory provisions. (C.R.S. '53, 40-2-4 and 15.) Consequently, no instructions thereon should have been given and no error was committed by the trial court in refusing so to do. *McKenna v. People,* 124 Colo. 112, 235 P. (2d) 351.

3. Present counsel severely criticize defendant's trial counsel in his presentation of the defense. We do not find it necessary to comment on or disapprove of trial counsel's presentation for under defendant's own statement and his answers to questions propounded by the officers, furnished the jury with ample competent evidence to justify the verdict which it returned. Any relief to be afforded defendant must be obtained through the executive rather than the judicial branch of the government.

The judgment is affirmed.