164 So.2d 817 (1964)
John Henry ROBERTS and John Alfred Adderley, Appellants,
v.
STATE of Florida, Appellee.
No. 31724.
Supreme Court of Florida.
March 6, 1964.
Rehearing Denied April 6, 1964.
*818 Steadman S. Stahl, Jr., Fort Lauderdale, for John Henry Roberts.
R.T. Shankweiler, Fort Lauderdale, for John Alfred Adderley.
James W. Kynes, Atty. Gen., and Bruce R. Jacob, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
John Henry Roberts and John Alfred Adderley seek reversal of verdicts and judgments convicting them of first degree murder without recommendation of mercy.
We have for consideration numerous alleged errors in the trial proceeding.
*819 At approximately 11:30 A.M., Friday, May 12, 1961, Benjamin Franklin Campbell, Jr., was shot while tending his grocery store. A customer, standing across the store, heard one shot and also heard a voice announce "You shot me." The customer ran to an adjoining kitchen area where Mrs. Campbell was preparing her husband's dinner. Mrs. Campbell also heard a statement, "I am shot." Upon entering the store proper, she found her husband lying on the floor mortally wounded. The drawer of the cash register was open and she noted that certain ten and twenty dollar bills which were previously in the drawer had disappeared. Before entering the store from the kitchen Mrs. Campbell dialed the telephone operator to call for an ambulance and the police. While on the phone she saw the heads of two people as they were leaving the front of the store. At about 6:00 P.M., May 12, 1961, John Henry Roberts was taken into custody. He was arrested initially for "investigation of the homicide." At about 11:30 P.M., May 12, 1961, John Alfred Adderley was similarly arrested. From about 6:30 P.M. until about 1:30 A.M., Roberts was interrogated by law enforcement officers. He denied any connection with the crime. Shortly after midnight May 13, and within approximately one hour after his arrest, Adderley made a full confession of his participation in the robbery and murder. He implicated Roberts. At about 11:45 A.M., May 13, 1961, Adderley was brought face to face with Roberts. Adderley stated, "It was a terrible thing we did. They have caught us * * * the only thing * * * to do * * * (is) * * * to tell the truth." Thereupon, around noon on Saturday, May 13, Roberts likewise gave a full confession, the essential aspects of which were factually corroborative of the confession made by Adderley. At the trial the defendants repudiated their confessions and undertook to establish alibis. They were found guilty of first degree murder by separate verdicts. There were no mercy recommendations. The death sentences ensued. The appellants have filed separate briefs. They seek reversal on numerous grounds which we shall discuss.
Roberts assaults the validity of his confession with the claim that it was obtained by prolonged and excessive interrogation which overcame his capacity to resist. It will be recalled that he was arrested at approximately 6:00 P.M., May 12. The interrogation started at about 6:30 P.M. and continued intermittently until 1:30 A.M. the next morning. The interrogation was not constant. There were periodic breaks. The significant fact is that at the end of this period of questioning Roberts continued to maintain his innocence. No confession was obtained during this initial interrogation. He went to bed around 1:30 A.M. He was not questioned again until after 9:30 A.M. On Saturday, May 13. In the meantime, Adderley had confessed. It is clear from the record that Roberts showed no inclination to confess until he was confronted by his accomplice. In fact, Adderley does not question the voluntariness of his confession by his brief in this Court. This, of course, does not affect Roberts.
We have held that a confession freely and voluntarily given while one is in custody for investigation of a crime is admissible at his subsequent trial. Williams v. State, 143 Fla. 826, 197 So. 562. The test of admissibility is whether the confession was voluntary. It must be shown that it was given without fear, hope of reward, or some other illegal influence or inordinate mental or physical pressures. It is true that Roberts was arrested at 6:00 P.M., Friday, May 12, and before being presented to a magistrate, his confession was obtained approximately sixteen hours later. This fact, however, would not destroy the validity of the confession if it was otherwise freely and voluntarily given. Dawson v. State, Fla., 139 So.2d 408; Singer v. State, Fla., 109 So.2d 7. There is no evidence to indicate either mental or physical abuse of the accused. Out of the presence of the jury, the trial judge correctly investigated the *820 voluntariness of the confessions as a condition to their admissibility. In the presence of the jury, the defendants were permitted to offer evidence to support their view that the confessions were not freely given. This evidence went to their credibility. The jury evidently accepted the confessions. We find no basis for reversal on this point.
The state placed in evidence a .25 caliber pistol which was shown to have belonged to Roberts. Also in evidence was a shell case found at the scene of the crime and a slug removed from the body of the victim. The state then called Ed Bigler, a ballistics expert, who testified that he had test-fired the pistol and had compared the markings on the test bullet with those from the evidence bullet removed from the victim. This he did under a comparison microscope. On the basis of this experiment he submitted the opinion that the bullet which resulted in Campbell's death had been fired from the gun belonging to Roberts. The test bullet was not placed in evidence. Both Adderley and Roberts contend that the test bullet should also have been filed in evidence so that the jury could compare it with the evidence bullet which had caused the death. It is clear that the markings on the bullets could not be identified with the naked eye. Additionally, they could be interpreted only by one trained in the science or experience of ballistics.
Thompson v. Freeman, 111 Fla. 433, 149 So. 740, cited by appellants, does not support their position. It involved the authenticity of a document and was governed by a statute. We have no such situation in the instant case.
It is now well established that a witness, who qualifies as an expert in the science of ballistics, may identify a gun from which a particular bullet was fired by comparing the markings on that bullet with those on a test bullet fired by the witness through the suspect gun. An expert will be permitted to submit his opinion based on such an experiment conducted by him. The details of the experiment should be described to the jury. Riner v. State, 128 Fla. 848, 176 So. 38, Rehearing Denied, 131 Fla. 243, 179 So. 404; State v. Vuckovich, 61 Mont. 480, 203 P. 491; Edwards v. State, 198 Md. 132, 81 A.2d 631, 83 A.2d 578, 26 A.L.R.2d 874.
In McKenna v. People, 124 Colo. 112, 235 P.2d 351, it was held that the opinion of an expert based on the test firing of a gun could be offered in evidence without the necessity of submitting a corroborating microphotograph for inspection by the jurors. In McKenna the expert relied upon a comparison of the test bullet with the evidence bullet under a comparison microscope. This was the identical procedure followed in the case at bar. In State v. Wojculewicz, 140 Conn. 487, 101 A.2d 495, the Court held that it was unnecessary to place the test bullet in evidence to sustain the admissibility of the expert's opinion based upon an experiment in which the test bullet was fired.
In cases such as these the opinion of the witness is allowed under the rules which govern other forms of expert testimony. He will be permitted to submit his conclusions where it is shown that by training and experience he is qualified to give an expert opinion on the basis of the ballistic tests which he himself conducted. It is not necessary that the test be conducted in the presence of the jury nor is it required that the expert submit to the jury the actual test materials. It was not error to refuse to compel the state to produce the test bullet.
When the jury was being qualified on voir dire the trial judge explained to them that it would be their function to determine the facts on the basis of the evidence. He told them that it was his duty to explain the law and their duty to apply the law to the facts. He informed them that even though they disagree with him on some statement of law, nevertheless, it was their responsibility to accept the law as he announced it. In the course of these remarks the judge stated, "If the court is mistaken *821 as to what the law is it is not the duty of the jury to correct him, but there is a way that it can be corrected through appellate procedure." Both appellants contend that this statement constituted reversible error. They base their contention on Pait v. State, Fla., 112 So.2d 380 and Blackwell v. State, 76 Fla. 124, 79 So. 731, 1 A.L.R. 502. In the cited cases the state attorney argued to the jury that if they committed any error it could be corrected in the Supreme Court. We held that in effect these remarks merely suggest to the jury that they need not be too greatly concerned about the results of their deliberations because there would be an appellate court to review them. Such was not the effect of the statement of the trial judge in the instant case. He impressed the jurors with the importance of their responsibility regarding factual determinations. He correctly informed them that they had no responsibility in deciding the law of the case. The power of an appellate court to review his decisions on the law did not in any particular relieve the jurors of any aspect of their vital responsibility in settling the facts. Overstreet v. State, 143 Fla. 794, 197 So. 516.
The state produced a witness, Boswell, who testified that on Monday, May 8, 1961, he accompanied Roberts to the establishment of one Livingston for the purpose of pawning Roberts' pistol. Boswell handled the negotiations with Livingston. Other testimony revealed that Roberts had redeemed his pistol from Livingston on the morning of the homicide. This was the pistol which was identified as the murder weapon. Cross-examination of Boswell indicated that he too had been taken into custody on the day the murder was committed. He was then asked "Were you a suspect?" The state's objection to the question was sustained. The defendants then made a proffer to show that if they were permitted to continue this line of questioning they could prove that Boswell had spent some five hours in jail under "suspicion" for the same crime and that "by virtue of being accused of this crime himself that he was likely to have given evidence in favor of the City [Sic] in order to get himself off the hook * * *." The judge refused the proffer.
A defendant is permitted wide latitude in the cross-examination of a state witness to show the motive of the witness in giving testimony for the state. It is permissible to interrogate the witness on the subject of any agreement to grant him leniency or immunity from prosecution in exchange for his testimony. Henderson v. State, 135 Fla. 548, 185 So. 625, 120 A.L.R. 742; Spaeth v. United States, 6 Cir., 232 F.2d 776, 62 A.L.R.2d 606.
The proffer in the instant case did not include a showing that the witness was still suspected of the crime nor did it include a tender of proof that the state had made any concessions to him in exchange for his testimony. The proffer merely submitted a conclusion that the witness "was likely to have given evidence" in favor of the state's position. Moreover, if Boswell had been completely discredited, there was other reliable testimony regarding the pawning of the pistol. In fact, Roberts himself testified to the pawning of the pistol on May 8 and its redemption on May 12. There was no question but that the gun belonged to Roberts, that he pawned it on May 8th and retrieved it on May 12. The ruling of the trial judge on the attempted cross-examination of Boswell was not reversible error.
Prior to and during the trial Adderley repeatedly sought a severance. We have held that the allowance of a severance rests within the sound discretion of the trial judge. His decision will not be disturbed absent a showing of abuse of discretion or some significant resultant damage to the defendant who seeks a separate trial. Sawyer v. State, 100 Fla. 1603, 132 So. 188; Manson v. State, Fla., 88 So.2d 272; Samuels v. State, 123 Fla. 280, 166 So. 743. In the instant case, there was no antagonism between the defenses of the two *822 defendants. They both sought to establish alibis. Their attorneys collaborated constantly during the trial. In those instances where evidence was admissible against one but not against the other, the trial judge carefully instructed the jury to this effect. We do not find that the judge abused his discretion in denying the motion for severance.
Adderley further contends that the indictment against him should have been quashed because of a claimed systematic exclusion of Negroes from the grand jury. The record is devoid of any evidence to support this claim. The mere fact that in this instance only one Negro was called to serve on the petit jury does not support the claim of systematic exclusion from the grand jury. Porter v. State, Fla., 160 So.2d 104. Adderley also contends that the grand jury which indicted him consisted of only 18 persons, rather than 23 as provided by Chapter 25554, Laws of 1949. Without exploring the constitutionality of the cited statute, it appears from the record that the 18-man grand jury was properly constituted as of the time the indictment was presented.
It is further pointed out that the indictment charged an unlawful homicide with a premeditated design. By its evidence, the state undertook to prove a homicide committed in the perpetration of a robbery. We are requested to recede from our previous holdings to the effect that an indictment generally charging an unlawful homicide with a premeditated design can be proven by evidence of a homicide committed in the perpetration of a robbery. Section 782.04, Florida Statutes, F.S.A. We see no reason to recede from our prior decisions on this point. Blake v. State, Fla., 156 So.2d 511.
We have examined the several other points assigned for reversal. We find them to be without merit and insufficient to justify an extensive discussion.
In addition to the contentions made by the appellants, we have reviewed the evidence in detail as required by Section 924.32, Florida Statutes, F.S.A. On the basis of this examination we fail to find that the interests of justice require a new trial.
The judgments are affirmed.
It is so ordered.
DREW, C.J., THOMAS, ROBERTS and CALDWELL, JJ., and RAWLS, District Court Judge, concur.