280 So.2d 673 (1973)
The STATE of Florida, Petitioner,
v.
Zebedee JOHNSON, Jr., Respondent.
No. 41441.
Supreme Court of Florida.
July 18, 1973.
Robert L. Shevin, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., for petitioner.
Phillip A. Hubbart, Public Defender, and Lewis S. Kimler, Asst. Public Defender, for respondent.
McCAIN, Justice.
By petition for writ of certiorari, we have for review a decision of the District Court of Appeal, Third District, reported at 249 So.2d 470, which is alleged to conflict with the decision of this Court in Roberts v. State, 164 So.2d 817 (Fla. 1964).
As a result of a homicide which occurred in Miami, Florida, respondent was indicted by the grand jury on a charge of first degree murder. Initially, he entered a plea of guilty to a lesser included offense, but was later allowed to withdraw that plea.
Two trials were conducted. At the first trial, in the Circuit Court, the court entered a directed verdict of acquittal on the first degree murder charge; the jury deadlocked on the second degree charge. The result was a mistrial. Thereupon, the State filed a new information against respondent, charging him with second degree murder, and the cause was transferred to the Criminal Court of Record for further proceedings.
During the discovery period prior to the second trial, defense counsel filed a motion to examine "any physical evidence relative to the gun with which the State charged the defendant was armed at the time of the crime". It thereafter appeared that the fatal bullet had been lost, after examination by the police ballistics expert, sometime after respondent had entered his initial guilty plea, but before the first trial. Defendant had not been previously apprised of this loss because the prosecution had not sought to introduce testimony by the ballistics expert at the first trial.
Respondent moved to suppress the testimony of the ballistics expert at the second trial, arguing that the inability of the defense to conduct an independent examination of the bullet denied him his right of *674 confrontation. This motion was denied by the trial court, and evidence relating to the fatal bullet was admitted into evidence. Defendant was found guilty of second degree murder and sentenced to twenty years in the state penitentiary.
On appeal, the District Court reversed the conviction, concluding, inter alia, that the testimony of the ballistics expert was erroneously introduced into evidence. The Court reasoned:
"Rule 1.220(b) of the Florida Rules of Criminal Procedure, 33 F.S.A. provides for defendant's examination of tangible evidence as well as the right to have a defense expert examine such evidence. It is this right which the appellant claims has been denied him. The State does not claim that appellant's right of examination and discovery was accorded to him but it urges that the fact that it was not accorded him was not the fault of the State. It urges that the general rule is that it is not necessary that a test be conducted in the presence of the jury or is it required that the expert submit to the jury the actual test materials. This language is found in Roberts v. State, Fla. 1964, 164 So.2d 817. This case also contains a statement that in that case it was not error to refuse to compel the State to produce the bullet. We note that the single case relied upon by the state was decided prior to the effective date of Florida Rules of Criminal Procedure. We think that appellant's right to examine tangible evidence is a part of his right to the confrontation of witnesses against him and the right to a full and complete cross-examination of the witnesses who are to be presented against him. Cf. Minturn v. State, Fla. App. 1962, 136 So.2d 359; Belger v. State, Fla.App. 1965, 171 So.2d 574; United States v. Williams, 424 F.2d 344 (5th Cir.1970); CrPR 1.220(b).
"Florida Rules of Criminal Procedure 1.220(b) is a recognition of an important procedural right and the State may not by the simple statement that they have `lost the physical evidence' prevent the exercise of the right and then use the `lost evidence' against the defendant. We therefore conclude that the court committed reversible error when it denied defendant's motion to suppress the ballistics expert's testimony.
"The evidence given by the ballistics expert was in no way cumulative and was so important in the case against this appellant that its admission was prejudicial error."
Initially, we granted certiorari because of apparent conflict with Roberts v. State, supra. However, after argument and upon further consideration of both cases, we are now persuaded that no conflict exists and that certiorari should be discharged.
In Roberts, the State placed in evidence a .25 caliber pistol which was shown to have belonged to the defendant. Also in evidence was a shell case found at the scene of the crime and a slug removed from the body of the victim. The State then called Ed Bigler, a ballistics expert, who testified that he had testfired the pistol and had had compared the markings on the test bullet with those from the evidence bullet removed from the victim. This he did under a comparison microscope. On the basis of this experiment he submitted the opinion that the bullet which resulted in the victim's death had been fired from the gun belonging to the defendant. The test bullet was not placed in evidence. Defendant contended that the test bullet should also have been filed in evidence so that the jury could compare it with the evidence bullet which had caused the death.
This Court held that it was not error to refuse to compel the State to produce the test bullet. We observed that the markings on the bullets could not be identified with the naked eye. Additionally, such markings could be interpreted only by one *675 trained in the science or experience of ballistics. We further concluded:
"It is now well established that a witness, who qualifies as an expert in the science of ballistics, may identify a gun from which a particular bullet was fired by comparing the markings on that bullet with those on a test bullet fired by the witness through the suspect gun. An expert will be permitted to submit his opinion based on such an experiment conducted by him. The details of the experiment should be described to the jury... .
"In McKenna v. People, 124 Colo. 112, 235 P.2d 351, it was held that the opinion of an expert based on the test firing of a gun could be offered in evidence without the necessity of submitting a corroborating microphotograph for inspection by the jurors. In McKenna the expert relied upon a comparison of the test bullet with the evidence bullet under a comparison microscope. This was the identical procedure followed in the case at bar. In State v. Wojculewicz, 140 Conn. 487, 101 A.2d 495, the Court held that it was unnecessary to place the test bullet in evidence to sustain the admissibility of the expert's opinion based upon an experiment in which the test bullet was fired.
"In cases such as these the opinion of the witness is allowed under the rules which govern other forms of expert testimony. He will be permitted to submit his conclusions where it is shown that by training and experience he is qualified to give an expert opinion on the basis of the ballistic tests which he himself conducted. It is not necessary that the test be conducted in the presence of the jury nor is it required that the expert submit to the jury the actual test materials. It was not error to refuse to compel the state to produce the test bullet."
Thus, in Roberts, unlike the instant case, no question of defendant's right of confrontation was raised. Defendant simply objected to the failure of the state to offer a test bullet into evidence. He did not argue and it does not appear that he was deprived of an opportunity to have the bullet examined by his own expert. Sub judice, respondent was effectively prevented from rebutting the State's conclusions concerning the fatal bullet when the bullet disappeared before it could be examined by his ballistics expert. Moreover, even had the test bullet been lost in the Roberts case, defendant would not have lost the opportunity to confront the state expert. He could simply have made his own test with the allegedly fatal gun and introduced the test bullet into evidence supported by the conclusions of his expert. Loss of a test bullet can be corrected by a second test; loss of a fatal bullet cannot. We therefore conclude that the controlling facts in the instant case dictate, or at least permit, a different result from that in Roberts and that the rationale of the two decisions are compatible. No conflict exists.
Accordingly, the writ of certiorari heretofore issued is discharged.
It is so ordered.
CARLTON, C.J., and BOYD, J., concur.
DREW (Retired) J., agrees only to conclusion that this Court is bereft of jurisdiction because of lack of conflict.
DEKLE, J., dissents with opinion.
ROBERTS and ADKINS, JJ., dissent and concur with DEKLE, J.
DEKLE, Justice (dissenting):
Defendant's motion to produce was not made until after he had initially entered a plea of guilty, was later allowed to withdraw that plea and had proceeded with one trial, all without any motion under Crim. Proc. Rule 3.220, 33 F.S.A. The State was thereby placed in an untenable position where, at that late point, the motion would not reasonably have been anticipated, and *676 the evidence was not physically available. Now for the Court to fault the State  and reward the defendant  when defendant at such late date decided upon a different course is a misuse of the Rule in my opinion.
The ballistics expert was on the stand for cross-examination upon his conclusions from the bullet in question; his testimony should not have been suppressed.
The Third District discounted the supporting authority of Roberts v. State, 164 So.2d 817 (Fla. 1964), because it "was decided prior to the effective date" of the present criminal rules. Roberts remains viable within the Rule and constitutes conflict in my judgment. The present holding, followed literally, will mean that the loss of physical evidence will defeat a conviction.
The able trial judge was within his discretion in denying the motion to suppress the expert's testimony. I would sustain him and quash the Third District's reversal of the conviction.
ROBERTS and ADKINS, JJ., concur.