580 So.2d 257 (1991)
John A. HUTCHINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1630.
District Court of Appeal of Florida, First District.
May 13, 1991.
*258 Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
John Hutchinson appeals his conviction of the sale or delivery of cocaine. Finding error on two of the four points challenging certain rulings during trial, we reverse and remand for a new trial.
The state charged Hutchinson with one count of having sold or delivered a certain amount of cocaine on December 27, 1989, in violation of section 893.13(1)(a)1, Florida Statutes (1989). The following portions of the trial proceedings are relevant to the issues on appeal.
During her opening statement to the jury, the prosecutor made the following remarks:
And I believe that they [the officers] will testify that on that particular evening, December 27th, they went on out on one of their, typical word for it I think they use is, buy bust operation. They go in an, you know, undercover vehicle, in plain clothes, they're not obviously in their police uniform. And they hit the *259 high areas that are the hot known drug areas of town.
Defense counsel objected to the prosecutor's characterization of the area in which Hutchinson lived as a "known drug area" and moved for a mistrial. The prosecutor responded that:
Your Honor, I made absolutely no mention of the fact that he lives in that area. The fact is these officers are familiar with the area, that's where they go and I think their testimony would establish that they make  they've made prior drug arrests in this particular area and that's why they go to this area.
Their testimony is going to come out this is where they made the sale and I don't think the fact that it's a high drug area prejudice his client one way or the other.
After the prosecutor assured the court that she could stay away from that subject, the court denied the motion for mistrial and granted the request for a curative instruction. The court then instructed the jury to disregard the prosecutor's comment that "the officers went to an area of high incidents of drug usage or drug traffic" in considering their verdict.
During the prosecutor's direct examination of Detective Grady, one of the undercover officers involved in the transaction with Hutchinson, the prosecutor asked him to describe his duties, and the detective responded:
Well, my duties are that I work on the street crime. I'm part of the street crime unit. And we go in certain areas, normally drug areas.
Defense counsel objected to this testimony as irrelevant and prejudicial, requested a curative instruction, and moved for a mistrial. The trial court denied the motion for mistrial and the request for curative instruction. The detective was then allowed to testify at length concerning the manner and method of conducting an undercover operation similar to the one that he was involved in on the evening of Hutchinson's arrest. Among other things, he stated that normally the officers would drive an undercover vehicle into a high crime area or drug area and attempt to purchase drugs. Defense counsel objected again, moved to strike that testimony, and requested a curative instruction, and the circuit court denied the requests. The detective continued to testify that in the undercover operations they would attempt to purchase drugs from the "street level dealers." The prosecutor asked the detective whether they were engaged in one of those operations on the evening of Hutchinson's arrest, and the detective responded, "Yes, I was." The detective described the undercover operation that he was involved in as a "drug buyer" that evening, and described the events that led to Hutchinson's arrest.
Detective Grady also testified that each evening before they went out on undercover operations, including the evening of Hutchinson's arrest, the money to be used in the operation would be copied and the serial numbers recorded. The money would then be marked with an ink pen and everyone within the units would be advised as to the markings. The markings would be changed every evening so that the officers would be able to identify the money when the offender is apprehended and so that the dealers would be unaware of the markings. On cross-examination, Grady could not recall the markings that were made on the money allegedly given to Hutchinson. However, when the prosecutor showed him the photocopy of the money on redirect examination, Grady stated that he recognized the photocopy of the money that was used that night in the buy-bust operation "[d]ue to the fact that the five dollar bill in which was used and the twenty dollar bill in which was used both have circles around it to identify with this case."
During the transaction in which Hutchinson was apprehended, he dropped the money to his feet and it was recovered by Detective Hughes, who then gave it to Grady. The money so recovered from Hutchinson was not put into any formal custody arrangement to preserve it for evidentiary purposes in the case against Hutchinson, but was used again in other undercover operations. Because the original money given to Hutchinson was not available, the court received the photocopy of the money *260 in evidence over Hutchinson's objection that the admission of the photocopy violated the best evidence rule.
During the jury charge conference, defense counsel requested an instruction on the lesser-included offense of possession of cocaine, arguing that under the facts of this case, it was alleged and proved that Hutchinson physically possessed some cocaine before handing it to the undercover officer. The trial judge denied the request on the ground that possession of cocaine was not charged in the information. The jury found Hutchinson guilty as charged, and the court entered judgment on the verdict and sentenced him as a habitual felony offender to a twenty-year term of imprisonment.
Hutchinson first contends that the circuit court erred in refusing to give a jury instruction on the lesser-included offense of possession of cocaine because the charge of "delivery" in the information implies that he physically possessed the cocaine and because there was uncontroverted evidence at trial that he possessed the cocaine before he allegedly sold or delivered it to the undercover police officers. We reject this argument because it is inconsistent with the recent decision of the Florida Supreme Court in McCloud v. State, 577 So.2d 939 (Fla. 1991). In McCloud, the court held that pursuant to the 1988 amendment to section 775.021(4), Florida Statutes, possession of cocaine is not a lesser-included offense of sale of the same quantum of the drug, and that a defendant can be convicted of both possession and sale or delivery of the same quantum of drug where the crimes occurred after July 1, 1988, the effective date of section 775.021(4), Florida Statutes (1988 Supp.). Referring to its previous opinion in State v. Smith, 547 So.2d 613 (Fla. 1989), the supreme court stated that "under a 1988 statutory amendment, the legislature intended that sale or delivery of a controlled substance and possession of that substance constitute separate offenses subject to separate convictions and separate punishments." 577 So.2d at 940. In State v. Daophin, 533 So.2d 761 (Fla. 1988), the court held that in order for a defendant to be entitled to a jury instruction on a category two (permissive) lesser included offense, such as possession where the charged offense is trafficking by delivery, both the accusatory pleading and the evidence must support the commission of the lesser offense. See also Munroe v. State, 514 So.2d 397, 401 (Fla. 1st DCA 1987), cert. denied, 519 So.2d 987 (Fla. 1988) ("A jury instruction encompassing a permissible lesser included offense, in contrast to a necessarily included offense, must be given only when the pleadings and evidence demonstrate that the lesser offenses is included in the charged offense."). The import of these decisions is that the state must elect to prosecute or not to prosecute a person for possession of cocaine when charging sale or delivery of cocaine, and that possession cannot be treated as a lesser included offense unless the element of possession is necessarily part of the charge filed.[1]
In this case, the information charged Hutchinson only with sale or delivery of cocaine, and not with possession of cocaine. Therefore, he was not entitled to an instruction on possession of cocaine as a permissive lesser included offense even though there was evidence at trial that he possessed the cocaine before he allegedly sold it to the undercover officers.
Hutchinson next contends that the circuit court reversibly erred in allowing the prosecutors to make comments and elicit evidence, on several occasions, that he was arrested in a high drug or high crime area. We agree that this point has merit. In Gillion v. State, 573 So.2d 810 (Fla. 1991), the supreme court addressed whether the characterization or identification of a specific location as a high crime area unduly prejudices a defendant who is arrested there. In Gillion, the prosecutor elicited information from an officer that on the *261 evening of the defendant's arrest, the officer observed several cocaine transactions take place in the area in which the defendant was arrested. The supreme court affirmed the district court's decision that the officer's testimony did not rise to the level of reversible error, stating that:
When [the officer] made the objected-to statement, the state was not attempting to characterize the area as one of high crime but was asking him what he saw when driving through it. If [the officer] actually saw criminal activity, testimony concerning what he saw is a factual matter, not a characterization of this location as high-crime nor an attempt to impugn the area's reputation. Such testimony, although not directly relevant to a specific element of the crimes for which [the defendant] stood accused, is relevant to clarify for the jury why this area was selected for this police operation, why this is where a drug buy would be made.
(Emphasis added). Id. at 811. The supreme court also stated that:
The instant case does not approach the impropriety demonstrated in Beneby. The prosecutor did not mention in opening statement the reputation or character of the area in question. When [the officer] testified, he relied neither on what had happened in the past, nor the reputation of the neighborhood. The officer's testimony as to what he observed was not the focus of the trial and was not highlighted in closing argument.

(Emphasis added). Id.
In Beneby v. State, 354 So.2d 98 (Fla. 4th DCA 1978), cert. denied, 359 So.2d 1220 (Fla. 1978), the case distinguished in Gillion, the prosecutor stated during opening statement that the area in which the defendant was arrested was "an area that is known to be inhabited by drug users." During the trial, the prosecutor asked a police officer his purpose for his having been in the area at the time of the defendant's arrest, and the officer responded: "Well, there had been several narcotic arrests made in that area; and the bar at 22nd and Sims had quite a reputation for narcotics in that area. That was the reason we went up there in that alley." 354 So.2d at 99. The Fourth District reversed the trial court's denial of the defendant's motions for mistrial, stating:
The fact that the policemen knew the scene as being within a reputed narcotics area doesn't tend to prove anything in issue and could only serve to unduly prejudice the jury. This case surely does not fall within the Williams Rule and we suggest the only reason the evidence was submitted by the State was to show bad character or propensity  just what Williams[2] forbids.
354 So.2d at 99. See also Johnson v. State, 559 So.2d 729 (Fla. 4th DCA 1990), affirmed, 575 So.2d 1292 (Fla. 1991) (defendant's conviction for tampering with evidence based on allegations that he crumbled a cocaine rock in his fist and disposed of the residue in a puddle of water reversed where the arresting officers testified at length about their experience in narcotics arrests and the reputation of the location where the arrest was made as a high crime area); Cabral v. State, 550 So.2d 46, 47 (Fla. 3d DCA 1989) (defendant's conviction reversed where, on direct examination, the arresting officer testified that the area where the defendant was arrested was "well known for illegal narcotics use" and that the police had "received complaints" that drugs were being sold in the defendant's apartment complex); Wilkins v. State, 561 So.2d 1339 (Fla. 2d DCA 1990) (defendant's conviction reversed where, over objection, the officer was allowed to characterize the vicinity of the arrest as a high crime area and to testify that the location was "drive-up" for cocaine sales area; those statements not only "impugn the character of the neighborhood, [they] also create[] an indelible impression that Wilkins was there for no other purpose than to deal in drugs").
*262 The situation in this case is distinguishable from that presented in Gillion because it is more like the situations involved in Beneby, Johnson, Cabral, and Wilkins. In this case, the prosecutors' characterization of the area of Hutchinson's arrest as a high crime or drug area first appeared during opening statement over the defendant's objection. During trial, Detective Grady was allowed to testify at length, over objection, about the conduct of undercover operations in high crime or known drug areas, and that when Hutchinson was arrested the officers were involved in one of those operations. During closing argument, one of the prosecutors stated that on the evening of Hutchinson's arrest, "we know ... they went out on a buy bust operation in an undercover vehicle."[3] Contrary to the state's contention, the prosecution's focus on the high crime and known drug reputation of the area where Hutchinson was arrested went far beyond that involved in Gillion. Unlike the officer in Gillion, Detective Grady was allowed to testify about the reputation of the area based not on his personal observations of drug transactions on the evening of Hutchinson's arrest, but rather on the reputation of the area and his knowledge of things that had happened in the past. The inferences to be drawn from those comments and testimony were patently prejudicial to Hutchinson and irrelevant to the issues being tried. The error in permitting the state to rely on this evidence before the jury cannot be considered harmless under the circumstances. This error requires reversal of the conviction and remand for a new trial. Beneby v. State, supra; Gillion v. State, supra.
Hutchinson also contends that the trial court erred in admitting in evidence the photocopy of the money allegedly used in the buy bust operation. The photocopy is a reproduction on a single sheet of paper showing one side of four twenty dollar bills and two five dollar bills, with a circle drawn around the serial number on one twenty dollar bill and one five dollar bill. No other distinguishable markings appear on the photocopy. The state offered this exhibit as proof of the actual bills given to Hutchinson and retrieved from him. Hutchinson argues that admission of this exhibit violated the best evidence rule because it was not the original money and this copy was not adequately identified and tied to the original money allegedly used in the transaction with him.
As the predicate for admissibility, the state presented the testimony of Detective Grady that the original bills were photocopied before being used in the subject buy with Hutchinson, and that certain marks for identification purposes were placed on the photocopy, but not on the original bills. After the bills had been photocopied, other markings were put on the original bills before they were used in the buy, but neither Grady nor any other officer could remember what those markings were. Likewise, on cross-examination, the officers were not able to recall the serial numbers of the bills so used, nor could they describe the markings placed on the photocopy. Although Grady said on further redirect examination that he remembered this was the money because the serial numbers on two of the bills were circled, no testimony established when or by whom the circles were affixed. Detective Hughes, the undercover officer who allegedly recovered the money after Hutchinson had dropped it to the ground, could not recall the markings that were made on the money that evening which enabled him to identify it as the same he had delivered to Hutchinson.
We conclude that this predicate was insufficient to support the admissibility of the photocopy under the relevant provisions of the evidence code. §§ 90.901, 90.952, 90.953, and 90.954, Florida Statutes (1989). Although the serial numbers of the bills were circled on the exhibit, these circles were not the marking used by the arresting officer to identify the money recovered from Hutchinson when he was apprehended. This proof was not sufficient to establish that the photocopy of the money offered in evidence was the same money given to Hutchinson during the alleged transaction. The officers' testimony clearly indicated that the money was marked *263 after it was photocopied, and that neither officer could recall the markings that were made on the money given to Hutchinson. The absence of competent evidence to identify the money actually used deprived Hutchinson of the ability to rebut the state's conclusion that the admitted exhibit was a photocopy of the marked money the officers actually used. See Johnson v. State, 280 So.2d 673 (Fla. 1973) (reversible error to permit the state to admit testimony of state's ballistics expert on markings on the bullet that killed the victim where the State could not produce the bullet for examination by the defendant's expert, thereby effectively preventing the defendant from rebutting the state's conclusion concerning the bullet). Therefore, the court erred in admitting the photocopy as competent and relevant evidence. We need not consider whether this error was nevertheless harmless, because the case must be remanded for a new trial due to the error previously discussed.
Last, Hutchinson contends that the circuit court erred in admitting an envelope containing the cocaine allegedly bought from him on the evening of his arrest, because there was substantial evidence of possible tampering and the cocaine was not packaged, when analyzed, in the same form as when it was turned into the police property room by the arresting officer. The state's evidence of the handling of the cocaine and the reason for the different packaging is sufficient to overcome these concerns. The court did not err in the rulings on the identification and admission of the cocaine allegedly bought from Hutchinson. Robinson v. State, 561 So.2d 1264 (Fla. 3d DCA 1990).
REVERSED AND REMANDED FOR NEW TRIAL.
ERVIN and ZEHMER, JJ., concur.
NIMMONS, J., concurs in part and dissents in part, with opinion.
NIMMONS, Judge, concurring in part and dissenting in part,
I concur in the majority's affirmance on the first issue regarding the trial court's refusal to instruct on possession of cocaine as a lesser included offense.
With respect to the second issue dealing with the state's repetitive reference to the situs of the subject crime as a high crime/illicit drug area, I concur in the majority's reversal. However, I concur in the result only. I fear that the tenor of the court's opinion conveys a lack of sensitivity to the practical necessity for the state to be able to explain  albeit briefly  why the given area was selected for this type of police operation. See Gillion v. State, 573 So.2d 810, 811 (Fla. 1991).
With respect to the third issue concerning the admissibility of the photocopy of the currency used in the drug transaction, I agree that the court erred in receiving the photocopy in evidence over the defendant' objection. However, I would not rely upon the best evidence rule. Instead, I would rely upon the more basic deficiency of a lack of identification or authentication. See § 90.901, Fla. Stat. Under the facts of this case, as set forth in the majority opinion, such deficiency would obtain regardless of whether the photocopy or the currency itself was received. However, I would find that the error in receiving the photocopy in evidence was harmless.
Finally, I would concur in the majority's affirmance on the fourth issue pertaining to the admission of the envelope into evidence.
NOTES
[1] It should also be noted that the Florida Standard Jury Instructions in Criminal Cases provides that where the charged offense is sale, manufacture, or delivery of a controlled substance, possession is a category two (permissive) lesser included offense only where possession is also charged. Fla.Std.Jury Instr. (Crim.) 300 (1989).
[2] Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). See § 90.404(2), Fla. Stat. (1989).
[3] The defense did not make a contemporaneous objection to this comment.